UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FT. MYERS DIVISION

| | |
|---|---|
| **MARK P. RILEY,** | |
| **Plaintiff,** | |
| **vs.** | |
| | **CASE NO.** |
| **CARMINE MARCENO, individually and in his official capacity as Sheriff of Lee County, Florida; CHARLES CUSTODIO, individually; NIKO THOMAS IRIZARRY, individually; and SCOTT JOSEPH SNIDER, II, individually,** | |
| **Defendants.** | |

## COMPLAINT

Plaintiff, Mark P. Riley, ("Riley") sues Defendants, Carmine Marceno, individually and in his official capacity as Sheriff of the citizens of Lee County, Florida ("Marceno"); Charles Custodio, individually ("Custodio"); Niko Thomas Irizarry, individually ("Irizarry"); and Scott Joseph Snider, II, individually ("Snider"), and alleges:

### Parties, Jurisdiction, and Venue

1.     This is an action for damages that exceed Seventy-Five Thousand ($75,000) and is brought under the common law of the State of Florida and for

violations of the Fourth and Fourteenth Amendments to the United States Constitution, pursuant to 42 U.S.C. § 1983 (2023).

2.      This Court has jurisdiction of this action pursuant to the provisions of 42 U.S.C. § 1331 (2023) (Federal question jurisdiction), 42 U.S.C. § 1983 (2021); 28 U.S.C. § 1343 (2023) (Civil right jurisdiction), and 28 U.S.C. § 1367 (2023) (Supplemental jurisdiction over state-based claims).

3.      Pursuant to 28 U.S.C. § 1391 (b) and (c) (2023) venue is proper in this District in that all Defendants reside within the District and the counts giving rise to this claim occurred within the boundaries of the Middle District of Florida.

4.      Plaintiff is authorized to pursue attorney's fees and costs pursuant to 42 U.S.C. § 1988 (2023).

5.      At all times material to these allegations, Plaintiff, Mark P. Riley ("Riley") was and is a resident of Collier County, Florida and the United States of America.  On December 16, 2021, the date of his false arrest, Riley was 61 years old.

6.      At all times material to these allegations, Defendant, Carmine Marceno was and is the Sheriff of Lee County, Florida and is a resident of Lee County, Florida ("Marceno").

2

7.      At all times material to these allegations, Marceno employed Defendant Niko Irizarry ("Irizarry") as a certified deputy sheriff, among other certified deputy sheriffs employed by the Sheriff of Lee County, Florida.

8.      At all times material to these allegations, Irizarry was a resident of Lee County, Florida and a certified deputy sheriff of Lee County, Florida.

9.      At all times material to these allegations, Defendant, Scott Joseph Snider, II ("Snider") was a resident of Lee County, Florida.

10.     At all times material to these allegations, Defendant, Charles Custodio ("Custodio") was a resident of Lee County, Florida

11.     At all times material to these allegations, Irizarry, a deputy of Lee County, Florida, was acting in the course and scope of his employment, including, but not limited to, his operations in the performance of official law enforcement duties, and unless otherwise indicated, he is being sued in his official and individual capacity.

12.     At all times material hereto in these allegations, Marceno, Sheriff of Lee County, Florida was acting in the course and scope of his employment, including, but not limited to, his operations in the performance of official law enforcement duties, and unless otherwise indicated, is being sued individually and in his official capacity.

4892-3858-1388, v. 1

13.    Marceno enjoyed final policymaking authority with respect to public safety, policing, and law enforcement matters and was thus responsible for the training, discipline, and supervision of all Lee County Sheriff's Office deputies, including Irizarry.

## Condition Precedent

14.    On November 7, 2022, Riley furnished a written notice of intent to initiate litigation on the state law claims asserted herein, to Marceno as Lee County Sheriff and the Florida Department of Financial Services, pursuant to Fla. Stat. § 768.28(6) (2023) via certified mail, return receipt requested.  On July 7, 2023, Riley forwarded an Amended Notice of Claim pursuant to Fla Stat. § 768.28(6) (2023) via certified mail, return receipt requested.  Riley has satisfied all conditions precedent to bringing this action and this action was timely filed thereafter. (Composite Exhibit "1")

## Preliminary Statement of the Case

15.    This case involves the most blatant and outrageous violation of constitutional and due process rights of an individual citizen. Riley, an innocent man, was arrested and imprisoned for crimes he did not commit.  Lee County Deputy Irizarry, working with Custodio and Snider, conspired to plant narcotics (fentanyl, methamphetamine, oxycodone, Xanax, amphetamine, and MDMA) with a street value of $150,000 in Riley's vehicle with the goal of having Riley

4

arrested for felony narcotics possession and facing a maximum of 65 years in prison for a crime he did not commit. Custodio's incentive and motivation was revenge for Riley's testimony against Custodio for insurance fraud, which led to Custodio's conviction. *See State of Florida v. Charles Custodio*, Case No. 19-CF-14506, Circuit Court of the 20th Judicial Circuit, Lee County. Irizarry's motive was the promise from Custodio of a sexual relationship and dinner in Paris, France, and the notoriety and career advancement for a big drug arrest. Snider's motive was cash, drugs, and a paid trip to Oregon.

16. Riley's Fourth Amendment constitutional rights were violated as he was falsely arrested by Irizarry. After hiring his own private investigators to investigate the case, Riley was eventually cleared of all charges. Irizarry, Custodio, and Snider were then each arrested and charged for crimes related to their conspiracy to falsely arrest and imprison Riley. This lawsuit seeks damages for the egregious violation of Riley's constitutional rights.

## **Mark Riley**

17. Riley has been employed as a real estate agent/broker for over 40 years and established his company, Lux International Properties in 2014.

18. In 2013, Riley met Custodio through a friend and they shared a personal and business relationship.

5

## Custodio's Insurance Fraud

19.    On November 9, 2018, Riley provided a sworn statement to the Florida Department of Financial Services, which led to the arrest of Custodio for insurance fraud.  Custodio pled guilty to a felony for insurance fraud and lost his nursing license.

20.    After violating his probation, Custodio spent time in jail.

21.    Custodio disliked Riley acting as a witness in the insurance fraud case, which led to Custodio's incarceration.  Custodio made it known in a text message to Riley that he would ruin his life and spend every minute and every dime he had to accomplish this goal.

22.    On February 25, 2019 at 2:30 p.m. Riley received the following text message from Custodio (Exhibit "2"):

> "I'm going to spend every min and every dime I have left working on ruin your and David's career and life's."

## Custodio and Irizarry

23.    Irizarry first met Custodio in 2018 through a good friend on social media.

24.    In 2019, Irizarry began working for the Lee County Sheriff's Office. Prior to becoming a road officer in April 2021, he worked at the Lee County Jail.

4892-3858-1388, v. 1

25.     On October 7, 2020, after violating probation in the insurance fraud case, Custodio was incarcerated for 364 days in the Lee County Jail.  At the time, Irizarry was a corrections officer, working the night shift, at the Lee County Jail.

26.      As a corrections officer working night shifts, Irizarry was responsible for supervising the nighttime trustees.  Custodio was a nighttime trustee and Irizarry frequently interacted with Custodio during the time Custodio was in jail.

27.     In May 2021, Custodio was released from the Lee County Jail and reached out directly to Irizarry, whose contact was saved in Custodio's phone as "Nico Lee County CO".  The initial communications started on May 18, 2021.  In a text message dated May 19, 2021, Custodio advised that he had been released from jail and was on probation.  Irizarry advised Custodio that he had a boyfriend (Composite Exhibit "3," text messages between Custodio and Irizarry dated May 19, 2021):

> **Custodio:**  You knew I was about to become a productive member of society again and decide to make to move….it's ok.  You can say 😉
>
> **Irizarry:**  Ha is that what you think?
>
> **Irizarry:**  You know I have a boyfriend lol
>
> ***
>
> **Custodio:**  Glad to hear though.  I hope he's keeping you on track. 😛
>
> **Irizarry:**  I think I'm more of a pain in his ass than anything lol
>
> **Custodio:**  That's makes more senses. 😛

7

## The Conspiracy

28.     In 2021, Custodio, Irizarry, and Snider conspired and reached an agreement to plant narcotics in Riley's vehicle in order to have him arrested on felony charges.  Through this coordinated effort between Custodio, Irizarry, and Snider, narcotics were planted in Riley's vehicle, and Riley was arrested.

## December 2021 / The Conspiracy

29.     Custodio recruited Snider to participate in the conspiracy to plant the drugs in Riley's vehicle.  In consideration for this, Custodio offered cash, drugs, a trip to Oregon, and potentially sex.  (Composite Exhibit "4")

30.     Snider agreed to use the alias "Shane Carroll" to contact Riley to view real property in Fort Myers, Lee County, Florida.

31.     Snider would later testify that he felt threatened by Custodio, because of Custodio's wealth and his connection to a corrupt police officer (See Exhibit 5, Excerpt of Snider's deposition transcript, April 6, 2023, 54:2-11) (emphasis added):

> The energy that I was feeling from [Custodio] wasn't right. I have a kid. · He knows where my son stays at, what city. He knows where I was working. · My life is definitely in jeopardy at that point in time. · This man is rich. Anybody with money has potential to do anything. · He can have someone kill me. · **This man had a best friend who's a police officer. · He was getting people arrested on the street. · What do you think about that? · Like that's ridiculous. · This man is capable of anything.**" (Exhibit "5")

8

32.    On December 8, 2021, Riley received a text from a "Shane Carroll," a/k/a Scott Snider, who indicated he was living in NYC and needed a realtor for a move to Estero/Naples due to a job relocation.  Riley agreed to meet "Shane Carroll" in Fort Myers.

33.    On December 12, 2021, Custodio contacted Irizarry and requested his assistance to set a trap to arrest Riley.  Custodio told Irizarry that he was working with another individual (Snider) and specified the type of narcotics that Irizarry would find in Riley's vehicle.  (Composite Exhibit "4," text messages between Custodio and Irizarry).

### December 12, 2021

**Custodio:** Nm u? Question.  I believe _____ died of an OD of Fentanyl.  I know who sold to him. If I know he just load up and it's driving home. If I can the cops will they pull him over and check his car?

**Irizarry:** We could def try to find probable cause to stop and search

**Custodio:** Isn't  a anonymous tip a probable cause?

**Irizarry:**  No because anyone could say someone has drugs on them

**Irizarry:** It's easy to find PC. Where does this guy live

**Custodio:** Fort myers.  You working days or nights?

**Irizarry:**  Night, what part of fort myers. I'd love to get him

**Custodio:**   I can def find out.   That would be phenomenal.  You working tomorrow night?

**Irizarry:**   I'm off tomorrow and Tuesday. Back Wednesday and Thursday

34.     On December 12, 2021, Custodio and Irizarry continued planning Riley's arrest, coordinating locations for his arrest (Composite Exhibit "4," text messages between Custodio and Irizarry):

> **Custodio:**  What area do you work? I can just let you know and you take the credit for 😊
>
> **Irizarry:** I'm near the beach rn but my squad patrols west district so everything from Boy Scout down to Gladiolus and everything West of that
>
> **Irizarry:** [Text of map of his patrol area]
>
> **Custodio:**  Let me see what I can find out.  I'll let you know and you better don't fuck it up lol
>
> **Irizarry:**  Lol I have connections so anywhere in Lee County
>
> **Irizarry:**  Is he a big seller?
>
> **Irizarry:**  What's his full name. I'll find where he lives and the vehicles registered to him.

35.     The map sent by Irizarry to Custodio, depicting Irizarry's patrol area, was later sent to Riley by "Shane Carroll" along with a text message requesting to view real property "somewhere in this area". (Composite Exhibit "6," text messages between Riley and "Shane Carroll").

36.     Irizarry, a certified deputy for the Lee County Sheriff's Office requested personal information on Riley as part of the plan to arrest Riley.

37.     On December 12, 2021, Custodio and Irizarry continued to discuss the specific drugs, and Irizarry advised Custodio of the type and amount of drugs he

would need to find in Riley's vehicle in order to charge Riley with felony trafficking (Composite Exhibit "4," text messages between Custodio and Irizarry):

> **Custodio:** As I was told he is [a big seller]and if you driving around with oz of fentanyl I guess there's your answer
>
> **Irizarry:** I need him to have 4 oz or more so I can charge with trafficking
>
> **Custodio:** I'll let you know

38.    Custodio and Irizarry continued to text each other on December 12, 2021 sharing personal information as to where Irizarry was living.  Irizarry advised Custodio that he had broken up with his boyfriend (Composite Exhibit "4," text messages between Custodio and Irizarry):

> **Custodio:** Broke up?  He couldn't deal with your non sense? 😛 hi
>
> **Custodio:** Jk*
>
> **Irizarry:** Hahaha you're damn right
>
> **Irizarry:** Jk lol

39.    The next day, on December 13, 2021, Custodio sent shirtless photographs of himself to Irizarry.  (Composite Exhibit "7," text messages between Custodio and Irizarry).

40.    These text messages establish personal incentives for Irizarry to participate in this conspiracy and his intent to violate Riley's constitutional rights.

4892-3858-1388, v. 1

**<u>December 13, 2021 – Unmarked Patrol Vehicle</u>**

41.    On December 13, 2021, Irizarry dropped his marked patrol vehicle off for service, and signed out an unmarked patrol vehicle to use while his vehicle was being serviced.

42.    This is uncommon of a deputy assigned to patrol to sign out an unmarked vehicle. Unmarked vehicles are easier to conduct surveillance with since they tend to draw less attention than a marked police vehicle. (Exhibit "8", Probable Cause Affidavit of Lieutenant Dash Lockhart for Arrest of Irizarry).

**<u>The Drugs / Agreement</u>**

43.    On December 13 and December 14, 2021, Custodio continued communicating with Irizarry on the drugs and the location for the arrest (Composite Exhibit "9," text messages between Custodio and Irizarry regarding the type of drugs).

> **Custodio:**  Looks like the guy is going to be picking up his order on week evening.  Looks like you going to be busy
>
> **Irizarry:**  Huh??
>
> **Custodio:**  The dealer
>
> **Irizarry:**  Oh oh so where is he located
>
> **Custodio:**  I guess he's picking up fentanyl and meth someone on the beach.  I'll find out where and time
>
> **Custodio:**  What are do you normally work? U sent me a map but where do you normally stay if I want to call you to let you know where he's at
>
> **Irizarry:**  I'm on the beach this month so that's perfect.

### Irizarry's Incentive and Motive

44.     In text messages dated December 14, 2021, Custodio offered Irizarry sexual favors and dinner in Paris for assisting in Riley's arrest.  The text messages confirm this continuing conspiracy (Composite Exhibit "9," text messages between Custodio and Irizarry):

> **Irizarry:**  Yes!  I'd love to catch him for you
>
> **Irizarry:** If I catch him though, you owe me dinner! 😊
>
> **Custodio:**  If you catch him I'll take you out for dinner in Paris
>
> **Irizarry:**  Ohh hell! Let me get on that passport
>
> **Irizarry:**  You gotta get me to have a bod like you first
>
> **Custodio:**  Come to the gym with me and I'll make it happen
>
> ***
>
> **Custodio:**  Lol I guess he's selling fentanyl and meth. Which one is worse charge?
>
> **Irizarry:** Fentanyl
>
> **Custodio:**  But it really doesn't matter if he has 5gr or 30gr right? It's just one trafficking charge right?
>
> **Irizarry:** Anything over 4gr is trafficking.
>
> **Irizarry:**  4gr of fentanyl
>
> **Custodio:** I wish was one trafficking charge for every 4 get
>
> **Irizarry:** Oh that would be great

45.     These text messages of December 14, 2021 exchanged between Custodio and Irizarry established the type and amount of drugs that would need

to be in Riley's vehicle.  Irizarry, a certified Lee County deputy, conspired with Custodio to plant the drugs necessary to falsely arrest and charge Riley for felony trafficking.

### December 14, 2021 – Wanting Publicity for Riley's Arrest

46.    Custodio and Irizarry worked together and in furtherance of the conspiracy as they wanted Riley's arrest on the news.  Custodio and Irizarry confirmed this objective in text messages exchanged on December 14, 2021 (Composite Exhibit "9" text messages between Custodio and Irizarry regarding publicity).

> **Custodio:**  I hope he makes the news
>
> **Irizarry:** Depending on how much he has I'll make sure of it
>
> **Custodio:** How much fentanyl and/or meth takes to make the news?
>
> **Irizarry:** Depends but I know people to get him on the news

47.    As of December 14, 2021, Custodio and Irizarry working together, and in furtherance of the conspiracy, identified the specific type and weight of drugs that would be planted in Riley's vehicle, and they confirmed their mutual desire for Riley's arrest to be in the news.

## December 15, 2021 – The Drugs and the Location for the Arrest

48.    On December 15, 2021, at 12:21 p.m., Custodio took a photograph of some of the illegal drugs that he intended to plant in Riley's vehicle.  Upon information and belief, Custodio texted the photo to Irizarry on that same date.  A true and correct copy of the photograph from Custodio's iPhone/iPad showing these drugs is at Exhibit "10" and is incorporated in this paragraph:



49.    After taking the photograph of these illegal drugs and purportedly sending this photograph to Irizarry, Custodio and Irizarry continued to conspire to plant the drugs in Riley's vehicle.

15

50.     Custodio and Irizarry worked together to set the location of Riley's arrest near Gulf Harbor in Fort Myers, Florida, as shown in text messages exchanged on December 15, 2021 (Composite Exhibit "11," text messages between Custodio and Irizarry):

> **Custodio:**  Do you know where gulf harbor is?
> **Irizarry:** The one off Iona?
> **Custodio:** Yup
> **Irizarry:** Yes
> **Custodio:** Do you cover that?
> **Irizarry:**  Yea
> **Custodio:** It's your time to shine.  If you nail this guy to the cross I'll even bottom for you 😜
> **Irizarry:**  Lmao!!

51.     In furtherance of this plan, Custodio and Irizarry continued exchanging text messages (Composite Exhibit "11," text messages between Custodio and Irizarry):

> **Irizarry:**  What's his name and what does he drive
> **Custodio:** Mark Riley
> **Custodio:** I'll find out.  I'll even find out when he gets his orders.  All you will have to do is take the credit and take him to Lee county jail. Fentanyl, oxy, Xanax, meth. Get your news contact lined up
> **Irizarry:**  I'm on it!
> **Custodio:** I was totally kidding about bottoming lol
> **Irizarry:** You already said it

16

> **Custodio:** There are exceptions so we'll see if you show
> me you deserve it

52.    Custodio then advised Irizarry in text message exchanges that another individual (Snider) was involved, and that Snider also wanted sexual favors from Custodio (Composite Exhibit "11," text messages between Custodio and Irizarry):

> **Custodio:** My other friend that's taking one for the team
> to help me wants my dick…gezz 😛
>
> **Irizarry:** 😊😊😊😊
>
> **Custodio:** U start working at 5 right?
>
> **Irizarry:** Yes
>
> **Custodio:** He is on her way to pick up fentanyl, Xanax,
> Oxy. I'll let you know when he has the package

### Snider's involvement as "Shane Carroll"

53.    On or about December 8, 2021, Custodio, through Snider, and under the alias of "Shane Carroll," contacted Riley to have Riley show him property located in Florida.

54.    For the next week, Riley continued to communicate with the individual he believed to be Shane Carroll regarding a prospective real estate purchase in Fort Myers.

55.    On December 14, 2021, Snider, acting as Shane Carroll, sent the map Irizarry had sent to Custodio depicting Irizarry's patrol area along with a request

to view real property "somewhere in this area". (Composite Exhibit "6," text messages between Riley and "Shane Carroll").

56.    On December 15, 2021, Custodio, acting as Shane Carroll, sent Riley an MLS listing for a property located in Gulf Harbor, Fort Myers, Florida. Riley then scheduled a showing of the Gulf Harbor property for around 5:00 PM that day.

57.    On December 15, 2021, Custodio picked Snider up and drove him to Gulf Harbor, Fort Myers to meet with Riley.   Snider confirmed that while in Custodio's vehicle he was given a black laptop bag by Custodio as a prop to look like a homebuyer.  In the laptop bag there was another bag with a large amount of illegal narcotics.  Custodio instructed Snider to plant the illegal narcotics in Riley's vehicle as Custodio was going to have a friend (Irizarry) with the Lee County Sheriff's Office conduct a traffic stop, find the narcotics, and arrest Riley for drug trafficking.

58.    Custodio then dropped Snider off near the entrance to Gulf Harbor, and Snider implemented the plan by meeting with Riley on December 15, 2021 and planting the illegal narcotics in Riley's vehicle.  Snider's payment for his role in the conspiracy was to receive drugs, $700 cash, possibly sex, and a plane ticket to Oregon, paid by Custodio.

4892-3858-1388, v. 1

59.    On December 15, 2021, Custodio and Snider, acting under the alias Shane Carroll, lured Riley to Fort Myers on a fraudulent real estate transaction. Custodio then drove Snider to Gulf Harbor where Snider took on the alias Shane Carroll during his interactions with Riley.

60.    Believing that Snider was Shane Carroll, Riley showed Snider the residence at Gulf Harbor.  During that interaction, Snider got into the back of Riley's vehicle and placed the illegal narcotics in the rear passenger side of Riley's vehicle without Riley's knowledge.

### Irizarry's First Attempt to Arrest Riley – December 15, 2021

61.    On December 15, 2021, Irizarry was on duty as a sworn law enforcement officer of the Lee County Sheriff's Office.  Once Riley finished his meeting with Shane Carroll (Snider), Custodio informed Irizarry that Riley was on his way to a 7 Eleven at Pine Ridge Road and McGregor Boulevard.

62.    Irizarry was unable to stop Riley himself, so he coordinated with K-9 Deputy Elsaid of the Lee County Sheriff's Office in an attempt to conduct a traffic stop on Riley that would lead to his arrest.

63.    Irizarry contacted K-9 Deputy Elsaid and directed him to where Riley was located, but Riley had left the 7 Eleven before the K-9 deputy could locate him.

64.    Custodio continued tracking Riley and reporting back to Irizarry on Riley's location.

65.     Irizarry relayed the information he received from Custodio to K-9 Deputy Elsaid, including a photograph of Riley's license plate, and K-9 Deputy Elsaid attempted to catch Riley before he left the jurisdiction of the Lee County Sheriff's Office.

66.     No arrests were made on December 15, 2021, as Riley had traveled outside the Lee County Sheriff Office's jurisdiction into Collier County before the Lee County deputies could catch up to him.

67.     Although no arrest occurred on December 15, 2021, the text messages between Custodio and Irizarry confirm they were actively working in concert to arrest Riley (Composite Exhibit "11" text messages between Custodio and Irizarry):

> **Irizarry:** What's the address and car?
>
> **Irizarry:** How old is Mark
>
> **Custodio:** Dark blue bmw sedan. He's by gulf harbor
>
> **Irizarry:** Is Mark Riley the exact spelling
>
> **Custodio:** Yes
>
> **Irizarry:** How old?
>
> **Irizarry:** Have a pic of him?
>
> **Custodio:**  Lol how would I know? And why would I care lol i don't care how old he is.  I just care how many year he's going to spend in prison 😜
>
> **Irizarry:** This him? (sent photograph)
>
> **Irizarry:** Don't share that pic with anyone
>
> **Custodio:** Yup

They then discussed a third party (Snider) that was playing the "bad guy" to help them arrest Riley:

> **Irizarry:** Do you know the address of pick up?
>
> **Custodio:** Working on it. I have a friend playing the bad guy to get the details and help me so he is giving. Me all the details
>
> **Irizarry:** Awesomeness
>
> **Irizarry:** We are getting his tag info now

68.     Custodio, Irizarry, and Snider worked together, knowing the exact amount of drugs that had been planted in Riley's vehicle, to arrange a location for Irizarry to arrest Riley (Composite Exhibit "11," text messages between Custodio and Irizarry):

> **Custodio:** He's getting OZ fentanyl, Xanax, oxy, meth.
>
> **Custodio:** [Sends map of Riley's location]
>
> **Custodio:** How far u from that 7-11?
>
> **Irizarry:** 2 min
>
> **Irizarry:** He's there now?
>
> **Custodio:** Not yet. Stay tuned

69.     The initial plan on December 15, 2021 was to arrest Riley at the 7-11. In this same exchange, Custodio confirmed the incentive and plan to take Irizarry

to Paris once Riley was arrested (Composite Exhibit "11," text messages between Custodio and Irizarry):

> **Custodio:** Looks like you better apply for that passport
> **Irizarry:** Hahaha

70. The text message exchanges also confirmed that Custodio started to follow Riley at a high rate of speed. Custodio forwarded his location so that Irizarry could track him. Riley was traveling south to Naples, Florida, and Custodio was following him.

71. Irizarry was tracking Custodio on his phone, and in text messages, they confirmed this (Composite Exhibit "10," text messages between Custodio and Irizarry):

> **Irizarry:** I'm tracking you now. On the way
> **Custodio:** 41
> **Irizarry:** I'm sending K9
> **Custodio:** Wtf he's going 80 miles
> **Custodio:** Alico towards 41
> **Custodio:** I mean 75
> **Irizarry:** K9 is tryin to catch up
> **Irizarry:** Are you sure he has drugs with him?
> **Custodio:** 100%

72. Custodio continued to follow and eventually obtained a picture of Riley's license plate and forwarded it to Irizarry. (Composite Exhibit "11," text messages between Custodio and Irizarry dated December 15, 2021).

73.     Irizarry forwarded the picture of Riley's license plate to K-9 Deputy Elsaid, who ran the plate number and identified Riley as the owner. K-9 Deputy Elsaid then investigated Riley, and "nothing came back that would spark any interest as far as suspicion". (Exhibit "12", Taped Statement of K-9 Deputy Elsaid dated February 4, 2022).

74.     Riley then drove to Collier County outside of Irizarry's jurisdiction, and so they planned to set the trap again for the next day.  Text messages at 6:23 PM on December 15, 2021 confirm that Irizarry was clearly upset that he did not arrest Riley (Composite Exhibit "11," text messages between Custodio and Irizarry):

> **Irizarry:**  If we can catch him today we'll need to set up again
>
> **Irizarry:**  Looks like you're in Collior
>
> **Irizarry:**  Fuck
>
> **Custodio:** Fuck fuck fuck
>
> **Irizarry:**  Don't share any of this info
>
> **Custodio:**  Of course. Let me see when he's getting more
>
> **Irizarry:** Ok
>
> **Custodio:** U on tomorrow too?
>
> **Irizarry:**  Yes.

75.    Within minutes of the text exchange between Irizarry and Custodio, Irizarry and K-9 Deputy Elsaid had a phone conversation beginning at 6:26 PM. (Exhibit "13", Verizon wireless cell phone bill for K-9 Deputy Elsaid).

76.    Irizarry never alerted deputies in Collier County to arrest Riley for drug possession and trafficking.  This is because Irizarry knew the drugs had been planted, and because Irizarry wanted the publicity and accolades for making the arrest in Lee County.

77.    Instead, on December 15, 2021, both Irizarry and Custodio continued texting each other about their conspiracy and plan to arrest Riley for trafficking the next day.  In this exchange, Irizarry instructed Custodio to delete their text messages, because Irizarry understood that what he was doing was wrong and illegal (Composite Exhibit "11," text messages between Custodio and Irizarry):

> **Irizarry:**  We'll get him
>
> **Custodio:**  I hope.
>
> **Irizarry:**  We will
>
> **Custodio:**  My name is not going to be anywhere in his mess right?  I have enough contact with Lee county sheriff already
>
> **Irizarry:**  Make sure to delete these messages please
>
> **Custodio:**  Absolutely
>
> **Irizarry:**  I will keep it out
>
> **Irizarry:**  No one will know
>
> **Custodio:**  Thank you. Worlds can't express how much this means to me. Thank you

4892-3858-1388, v. 1

> **Irizarry:** Well get him don't worry
>
> **Irizarry:** Absolutely
>
> **Custodio:** He's getting more shit tomorrow 😠
>
> **Irizarry:** Perfect
>
> **Irizarry:** Give me a time and place
>
> **Custodio:** I might just pick u up and drag u w me so you don't fuck up this time lol

78.     This text message exchange on December 15, 2021 confirms that Irizarry and Custodio (who was working with Snider) continued conspiring together to unlawfully arrest Riley.  (Composite Exhibit "10," text messages between Custodio and Irizarry):

> **Custodio:** This guy speeded from gulf harbor until exit 111 on 75. No fucks given. There your probable cause
>
> **Irizarry:** Oh definitely lol

### The Arrest – December 16, 2021

79.     On December 16, 2021, Irizarry was on duty as a sworn law enforcement officer with the Lee County Sheriff's Office.  Custodio and Irizarry again discussed the plan to have Riley at the 7 Eleven (Pine Ridge Road and McGregor Boulevard). Once Irizarry located Riley, the plan included having Riley move his vehicle to another location so Irizarry could conduct a traffic stop.  In

order to implement this plan, Custodio again coordinated these efforts through Snider and his alias "Shane Carroll."

80.    On December 16, 2021, Custodio and Irizarry exchanged more text messages to coordinate their efforts to have Riley arrested (Composite Exhibit "14," text messages between Custodio and Irizarry):

> **Custodio:**  He's getting more fentanyl. You better get all your ducks 🐥 on the road today mister
>
> **Irizarry:**  Get me a good time
>
> **Custodio:**  Once he get the package my friend will set him up like he wants to buy fentanyl and will have him waiting somewhere
>
> **Custodio:**  What probable cause you going to give to search his car?
>
> **Irizarry:**  We need like a traffic violation
>
> **Custodio:**  So if he's parked at gas station it won't work?
>
> **Custodio:** And he wants to meet before 5?
>
> ***
>
> **Irizarry:**  See if he can meet at 7-11 at 4:45. Gives me time to avoid roll call
>
> **Custodio:**  Ok
>
> **Irizarry:**  Once he there and I have eyes on him then change merging locations
>
> **Irizarry:**  meeting
>
> **Custodio:** Gotta
>
> **Irizarry:**  I'm in the area now
>
> **Custodio:**  U r the man. I'm almost there. I'll keep you posted

81.    Irizarry texted Custodio to let him know he had parked across the street in an unmarked car.  Custodio acknowledged and stated that once Irizarry had a visual of Riley, he would use "Shane Carroll" to have Riley move to the La Casita Mexican Restaurant located at 15185 McGregor Boulevard.

82.    Text conversations between Irizarry and Custodio confirmed that Irizarry observed Riley at the 7 Eleven and that Custodio (using the alias "Shane Carroll") then instructed Riley to move to the La Casita as planned.  (Composite Exhibit "14," text messages between Custodio and Irizarry).

83.    Acting as the interested buyer, "Shane Carroll," Snider coordinated and assisted Irizarry and Custodio in these efforts to have Riley at the 7 Eleven and then to move to the La Casita Restaurant in Fort Myers.

## The Conspired Traffic Stop and Arrest

84.    On December 16, 2021, Irizarry and Custodio exchanged the following three phone calls prior to the traffic stop (Exhibit "15", Call logs between Irizarry and Custodio):

**Custodio call to Irizarry at 2:40 PM.**

**Custodio call to Irizarry at 4:02 PM.**

**Irizarry call to Custodio at 4:10 PM.**

4892-3858-1388, v. 1

85.     Upon information and belief, on December 16, 2021, Irizarry and K-9 Deputy Elsaid had a twelve-minute phone conversation beginning at 5:01 PM. (Exhibit "13", Verizon wireless cell phone bill for K-9 Deputy Elsaid).

86.     On December 16, 2021, Riley received a text message from Shane Carroll (a/k/a Snider/Custodio) asking him to leave the 7 Eleven and meet at La Casita Restaurant located at 15185 McGregor Boulevard.

87.     Custodio and Irizarry both followed Riley from the 7 Eleven to the La Casita Mexican restaurant.  Custodio and Irizarry parked to the south of La Casita near Big Lots and Goodwill.  Custodio and Irizarry continued to text while watching Riley.

88.     During one of these conversations, Custodio asked Irizarry if he saw Riley, and Irizarry asked Custodio to get Riley to leave the restaurant so that Irizarry could conduct the traffic stop.  Riley left La Casita, and Irizarry followed behind him in the unmarked car.

89.     On December 16, 2021, the text message exchanges between Custodio and Irizarry, and between Shane Carroll a/k/a Custodio and Riley, again confirmed their conspiracy (Composite Exhibit "14," text messages between Custodio and Irizarry and Composite Exhibit "16", text messages between "Shane Carroll" and Riley)):

> **Carroll/Custodio to Riley @ 4:19 PM:** We'll probably be
> there 4:45 pm

**Irizarry to Custodio @ 4:23 PM:** I'm parked across the street in an unmarked

**Custodio to Irizarry @ 4:32 PM:** What's unmarked? Lol undercovered?

**Irizarry to Custodio @ 4:32 PM:** Yeah

**Carroll/Custodio to Riley @ 4:41 PM:** ETA?

**Riley to Carroll/Custodio @ 4:44 PM:** About 6 min

**Riley to Carroll/Custodio @ 4:44 PM:** 7 11

**Custodio to Irizarry @ 4:44 PM:** 6 min away

**Custodio to Irizarry @ 4:44 PM:** Once he's there he will change location to

> Lácasita
> 15185 McGregor Blvd
> Fort Myers, FL 33908
> United States

**Custodio to Irizarry @ 4:51 PM:** He's pulling up

**Irizarry to Custodio @ 4:51 PM:** I see

***

**Custodio to Irizarry @ 4:52 PM:** Ask him to change location?

**Irizarry to Custodio @ 4:52 PM:** yrs

**Irizarry to Custodio @ 4:53 PM:** Let me know when you leave

**Custodio to Irizarry @ 4:55 PM:** Ok

**Carroll/Custodio to Riley @ 4:56 PM:** Oh God. She's at the place you dropped me off. Ughh the restaurant. Can you meet her there before she's lost and yesterday repeat itself? I'm sorry man

**Riley to Carroll/Custodio @ 4:56 PM:** Ok tell her to stay put I will go there

**Carroll/Custodio to Riley @ 4:56 PM:** Will do it

**Custodio to Irizarry @ 4:56 PM:** Im going home watch the news 😉

29

**Irizarry to Custodio @ 4:56 PM:** He's backed in at 7-11

**Custodio:** He will be leaving to la casita

**Irizarry to Custodio @ 4:56 PM:** Ok

**Custodio to Irizarry @ 4:57 PM:** All yours

**[Irizarry and K-9 Deputy Elsaid have a twelve-minute phone conversation beginning at 5:01 PM]**

**Custodio to Irizarry @ 5:02 PM:** Package is in the car. He just picked up

**Irizarry to Custodio @ 5:02 PM:** Ok

**Irizarry to Custodio @ 5:02 PM:** waiting for him to leave the restaurant

**Irizarry to Custodio @ 5:03 PM:** tell him to leave or something

**Custodio to Irizarry @ 5:03 PM:** Ok

**Carroll/Custodio to Riley @ 5:06 PM:** Dude some old lady ran red light and hit her right down the road. Ughhhv this can't get any worse. We gonna have to re schedule for morning. I don't want u to be late

**Irizarry to Custodio @ 5:06 PM:** I need him to leave

**Custodio to Irizarry @ 5:06 PM:** He is

**Custodio to Irizarry @ 5:06 PM:** U got your eyes on him? Im leaving

**Irizarry to Custodio @ 5:07 PM:** I cant see the front

**Custodio to Irizarry @ 5:07 PM:** He should leaves shortly

**Custodio to Irizarry @ 5:07 PM:** There u go

**Riley to Carroll/Custodio @ 5:08 PM:** It's ok the others are scheduled brian is here to

**Riley to Carroll/Custodio @ 5:09 PM:** Is she ok

**Custodio to Irizarry @ 5:09 PM:** I lost him. U got your eyes on him?

**Riley to Carroll/Custodio @ 5:10 PM:** I will go help her where is she

30

**Carroll/Custodio to Riley @ 5:10 PM:** Let me ask

**Riley to Carroll/Custodio @ 5:10 PM:** Towards 41?

**Custodio to Irizarry @ 5:12 PM:**  Please tell me you got your eyes on him

**Irizarry to Custodio @ 5:12 PM:**  Got him

**[Irizarry's call with K-9 Deputy Elsaid ends.]**

**Custodio to Irizarry @ 5:13 PM:**  I might find some peace and move forward after today 🙏thank you

## The Illegal Arrest

90.     Riley was on McGregor Boulevard heading east and noticed two white unmarked "police" cars behind him.  At that point, the lights came on and a loudspeaker advised him to pull over.  Riley moved to a condominium complex and stopped. At that time Riley noticed several more police cars behind him.

91.     Irizarry and K-9 Deputy Elsaid initiated the stop, and after all of the vehicles pulled over, Irizarry and K-9 Deputy Elsaid exited their vehicles and approached Riley's vehicle.

92.     K-9 Deputy Elsaid approached Riley's driver's side window, and he claimed that Riley had run a red light.  When Riley indicated there was no light, Irizarry, who approached Riley's passenger side window, said it was a stop sign.

93.     Riley voluntarily provided his license, registration, and insurance. Irizarry indicated he had questions and asked him to step out of the vehicle. During this time additional Lee County deputies began to arrive on scene.

4892-3858-1388, v. 1

94.     K-9 Deputy Elsaid asked if he could search the vehicle and if Riley had a gun in the vehicle.  Riley stated that he had no gun, but that he did have three prescription medications.  Riley told the deputies where to locate the prescription medications that were in his vehicle.

**The Search**

95.     K-9 Deputy Elsaid and his K-9 Cairo began conducting a free air sniff of the vehicle for the detection of illegal narcotics.

96.     K-9 Deputy Elsaid and Irizarry could not find the drugs during the initial search of Riley's vehicle.  Irizarry texted Custodio and asked for direction as to where the drugs were planted (Composite Exhibit "14," text messages between Custodio and Irizarry dated December 16, 2021):

> **Irizarry:**  Nothing found so far
>
> **Custodio:**  It's there. Check under passenger's seat?
>
> **Custodio:**  Please tell me it's there
>
> **Custodio:**  🙁
>
> [Time passes while Irizarry goes back to Riley's vehicle to look for the drugs under the passenger seat.]
>
> **Irizarry:**  Got it
>
> **Custodio:**  There's is God up there 👏
>
> **Custodio:**  🙏 once you book him get to work on that passport
>
> **Custodio:**  Will he make the news?

97.    Once Custodio directed Irizarry on the location of the drugs, the officers searched the rear passenger seat for about five minutes.  This was the same place that Snider a/k/a Shane Carroll planted the drugs in Riley's vehicle. (See Exhibit "17", Excerpt of Snider's deposition transcript, April 6, 2023).

98.    The drugs were in a black pouch located in the pocket of the rear passenger door of Riley's vehicle. (See Exhibit "18", picture of drugs located in Riley's vehicle)

99.    The search to find the planted drugs took approximately 20 minutes and when they finished, they came over to Riley and asked him to put his hands behind his back.

100.    When Riley could not put his hand behind his back because of a recent surgery, they cuffed him in the front.  Riley was not read any Miranda rights.

101.    Riley was then placed in the back of Irizarry's unmarked patrol car where Riley observed the Lee County Sheriff's Office as they conducted a second search of his vehicle.

102.    Riley observed Irizarry take one hand and open the top of his vest and, with the other hand, he appeared to pull something from his vest.  Defendant, Irizarry and another Lee County deputy then went to the driver's side passenger door and opened this door.

103.    The Lee County deputies searched the entire vehicle, under the hood, and the back boot of the vehicle.  During the search, two deputies attempted to block Riley's view of what they were doing.

104.    The Lee County Sheriff's deputies then convened in front of Irizarry's unmarked patrol car, and they started laying ziplocked bags of different types of items and pills on the hood.

105.    The narcotics planted in Riley's vehicle included:

- 42 clear ziplocked baggies and 1 clear plastic bag containing a white-powdered substance which field tested positive for fentanyl with a total baggage weight of 32.61 grams;

- 10 clear ziplocked baggies containing a white crystallized substance which field tested positive methamphetamine with a total package weight of 5.08 grams;

- 11 white circular pills with imprint T192 that were verified by drugs.com as Oxycontin pills with a total package weight of 5.51 grams;

- 14 white, orange oval pills with imprint GG257 that were verified by drugs.com as Xanax pills with a total package weight of 3.38 grams, also in the same clear bag were several unknown white circular pills;

- 3 pink circular pills with imprint U30 that were verified by drugs.com as methamphetamine pills with a total package weight of 1.07 grams;

- 3 pink and 2 orange pills shaped like a ghost.  The pill substance field tested positive for MDMA

34

(methylenedioxymethamphetamine) with a total package weight of 1.81 MDMA pills.

(See Composite Exhibit "18", pictures of drugs and corresponding weights)

106. On the date of the arrest, Lee County Sheriff's Office took a photograph of the drugs that were planted in Riley's vehicle. This photograph is incorporated in this paragraph (Exhibit "19"):



107. A Lee County deputy approached Riley in the patrol car and demanded that Riley confess to possession of the narcotics. Riley stated they were

not his drugs and that he had never seen them. Riley told the deputies about Shane Carroll and how Shane Carroll had been in the back of his vehicle when he was showing him property.

## Off-Location Police Site

108.   Riley was then taken by patrol car to an off-location Lee County Sheriff's Office site, and he was put in a pink room with a black chair for about 30 minutes until Detective DeKeyser and Irizarry entered the room and began interrogating Riley and pressuring Riley to confess. Riley was finally read his Miranda rights and was asked why he had been in Fort Myers. When Riley started to tell them that he was showing a property, one of the Lee County deputies claimed, "you're lying."

## Interrogation for a crime not committed

109.   During the interrogation, Riley admitted to being at the 7-11 gas station, then driving to the La Casita Mexican Restaurant to meet with a prospective buyer. Riley told Detective DeKeyser and Irizarry that the buyer did not show up, and as a result, Riley decided to leave the area and return to Naples.

110.   Riley also told Detective DeKeyser and Irizarry about Shane Carroll and how Shane Carroll had been in the back of his vehicle when he was showing him property on the day prior.

111.    Detective DeKeyser and Irizarry continued to question Riley, and began asking Riley about the narcotics, at which time Riley invoked his right to stop answering questions and requested an attorney.

112.    This entire interrogation took approximately four hours, after which Riley was taken to the police station in downtown Fort Myers.  Riley was fingerprinted and booked.  All his belongings were taken by the Lee County Sheriff's Office, including his cell phone, which remained in the custody of the Lee County Sheriff's Office until March 21, 2023.

### Custodio and Irizarry's celebration of illegal search and false arrest

113.    Between the time that Riley was pulled over and eventually booked, Irizarry and Custodio exchanged twenty-three text messages. (Composite Exhibit "20," text messages between Custodio and Irizarry).

114.    Custodio and Irizarry continued to exchange text messages regarding this illegal arrest and the time that Riley would have to spend in prison for felony trafficking charges.  This text message exchange is important as it shows the furtherance of their conspiracy to have Riley arrested and sentenced to substantial jail time (Composite Exhibit "20," text messages between Custodio and Irizarry confirming this booking and celebrating the illegal arrest):

> **Custodio:** 15 years is plenty.  He's old ass will die before that anyways
> **Irizarry:** Good

**Custodio:** Did you book him?

**Irizarry:** A lot of paperwork for this one. Hell be booked in the next hour. He'll be on the web site

**Custodio:** Your friendship just upgraded from our basic level to our highest level which is our diamond platinum mister 🏆

**Irizarry:** Loved "Your friendship just upgraded from our basic level to our highest level which is our diamond platinum mister 🏆"

**Irizarry:** What's the guys name that passed due to this guy?

**Irizarry:** Call me when you can.

115.    Irizarry accepted the bribe from Custodio to illegally arrest Riley. His illegal bribe involved his acceptance of dinner in Paris, but also a sexual relationship with Custodio. The text message exchanges on December 17, 2021 confirm this (Composite Exhibit "20," text messages between Custodio and Irizarry dated December 17, 2021):

**Custodio:** Let me know if you want me to pay my dues take you did that dinner  😉

**Irizarry:** Yes I'm taking you up on that lol

**Custodio:** Great. Since you did a pretty outstanding job let me see where I'll take you 😊 anything you don't eat?

116.    On December 24, 2021, Custodio continued to express his gratitude by texting a picture of himself in Santa Claus lingerie to Irizarry. He claimed in this text message (Composite Exhibit "20," text messages between Custodio and Irizarry):

**Custodio:**  Merry Christmas Mr! You certainly gave me one of the best gifts that I could ask for! 🎁 THANK YOU [Photograph of Custodio in Santa Claus lingerie attached].

**Irizarry**: Loved  "Merry Christmas Mr! You certainly gave me one of the best gifts that I could ask for! 🎁THANK YOU [Photograph of Custodio in Santa lingerie attached]"

**Irizarry:**  You're looking amazing!  Get me to look like that.

117.    All of these text messages and the evidence of the criminal conspiracy was uncovered by Riley due to an investigation that Riley initiated and paid for using his own investigative team.

<u>**The Criminal Charges against Riley**</u>

118.    Riley was charged with trafficking illegal drugs and possession of controlled substances.  The total bond was set at $43,000 and while he was advised that he was facing 40 years in prison, the maximum sentencing was actually 65 years and subject to a minimum of at least 25 years.  The charges against Riley included:

- Trafficking and illegal drugs of 28 grams or more, Fla. Stat. § 893.135(1)(c) (2021) - First Degree felony;
- Possession of controlled substance with intent, Fla. Stat. § 893.13(1)(a) (2021) - Second Degree felony;
- Possession of controlled substance, Fla. Stat. § 893.13(6a) – Third Degree felony;
- Possession of controlled substance, Fla. Stat. § 893.13(6a) – Third Degree felony;

- Possession of controlled substance, Fla. Stat. § 893.13(6a)
  – Third Degree Felony;
- Possession of controlled substance, Fla. Stat. § 893.13(6a)
  – Third Degree felony.

(Exhibit "21").

119.    These events were coordinated by Custodio, Irizarry, Snider, and other deputies working together for a common goal and objective of planting narcotics in Riley's vehicle and having him charged with a crime he never committed.

## Investigation by Riley's private investigators and Riley's exoneration

120.    Defendant, Marceno refused to investigate the circumstances surrounding Riley's arrest.  As Riley was facing substantial criminal charges for a crime he did not commit, he hired private investigators to determine what happened in this case.

121.    After a full investigation by Riley's private investigators, it was discovered that a former felon, Custodio, worked directly with Irizarry and Snider, to plant the narcotics in Riley's vehicle.

122.    Riley's investigators carefully reviewed the "facts" in Irizarry's booking report, recreating the events as described by Irizarry, to confirm the veracity of Irizarry's report.  Among other "facts," Irizarry claimed in his booking report that he personally saw Riley move a bag containing narcotics from one side of his vehicle to the other.  By stating that he saw Riley move the narcotics, Irizarry

40

had probable cause for charging Riley with possession.  The private investigators confirmed that, from where Irizarry was sitting in his unmarked patrol car, Irizarry could not have seen Mark's vehicle much less see Riley move anything from one side of it to the other side.

123.    Riley's investigators concluded that Irizarry had no probable cause for stopping Riley.

124.    Riley's private investigators also investigated Riley's meeting with "Shane Carroll" reviewing camera footage from the Gulf Harbor area.  After reviewing the camera footage, the private investigators noticed that "Shane Carroll" had been dropped off to meet Riley by someone driving a Maserati. Riley's private investigators learned the Maserati was owned by Custodio, and they reported this finding to Riley.

125.    Immediately, Riley recalled the unnerving text he had received from Custodio on February 25, 2019 (Exhibit "2"): "I'm going to spend every min and every dime I have left working on ruin your and David's career and life's."  Riley knew he had been framed by Custodio.

126.    Riley's private investigators unequivocally determined that Riley was innocent.

127.    Riley's private investigators then presented their findings to the Lee County Sheriff's Office, which then started its own internal affairs investigation.

128.    On the basis of the information provided by Riley and his private investigators, the Lee County Sheriff's Office investigated and confirmed that Riley was innocent.

129.    Eventually, on February 11, 2022, Custodio, Irizarry, and Snider were all arrested and became defendants in other criminal proceedings.

130.    On February 11, 2022, a Notice of Nolle Prosequi was issued to Riley. (Exhibit "22")

131.    On February 12, 2022, Defendant, Marceno instantly took to the air waves, holding a press conference, to take credit for the work performed by Riley's private investigators and to give Lee County's citizens the impression that he had initiated the investigation into Irizarry's arrest and that he had policies, customs, and procedures to ensure dishonest deputies were exposed and terminated.

132.    During the press conference Defendant Marceno made the following statements:

- "In early January our internal affairs division received information that caused us concern that the arrest was not lawful. I immediately assembled a major crimes unit task force to begin an investigation into the arrest. We moved quickly and decisively and left no stone unturned, spared no expense, and devoted every available resource to this investigation."

- "The task force conducted a thorough investigation, revealing an elaborate conspiracy to plant illegal drugs in victim's vehicle and arrange a traffic stop on that vehicle after the drugs were planted."

- "The task force utilized state of the art technology from our digital forensics unit and our real time intelligence center. To reveal the true names of those involved to identify and access bogus email accounts and text messages. Task force detectives travelled across the country, working 24 /7 for the truth."

- "We received a complaint to our internal affairs department, as we do every complaint we get, we look into it immediately, transparently and fully for facts. And once we realized that Irizarry was going to be involved in a criminal investigation, more so that there was validity to it, he was immediately immediately placed on leave."

133.    At the time Defendant, Marceno gave his statements to the press, he knew or should have known that Irizarry, an inexperienced road patrol deputy, had somehow checked out an unmarked police car without reporting his intentions to a supervisor or otherwise involving the felony drug division. Defendant, Marceno also knew or should have known that his policies, customs, and procedures, including but not limited to the lack of dash cameras and body cameras and the unfettered use of personal cell phones, had resulted in Riley being framed and arrested by Irizarry, Custodio, and Snider.

134.    Defendant, Marceno's statements at the press conference referenced in Paragraph 132, failed to recognize that Defendant, Marceno and his department refused to investigate the circumstances surrounding Riley's arrest and only after a full investigation by Riley's private investigators determined and discovered this conspiracy, did Lee County Sheriff's Department investigate the facts and the reports from Riley's private investigators.

135.    While Riley's initial rights to carry a firearm were also suspended, they were restored in due course.

136.    Irizarry admitted to falsifying an official document when he claimed that he saw Riley holding the bag of narcotics, and he admitted that he lied when he asserted this in his probable cause affidavit. Irizarry admitted the following:

(a)    Irizarry admitted to the Lee County Sheriff's Office that he lied in his sworn statement with Lieutenant Poklemba when he denied having prior knowledge of what narcotics would be found in Riley's vehicle.

(b)    Irizarry admitted he caused harm to Riley by arresting him for a crime he did not commit and that Custodio benefitted from the arrest of Riley.

(c)    Irizarry admitted to the Lee County Sheriff's Office that he delayed and obstructed the Lee County Sheriff's Office felony drug investigation by falsifying an official document and lying during a sworn statement.

137.    The actions by all these defendants constitute a violation of Riley's constitutional and civil rights under both federal and state law.

138.    The State Attorney's Office for the Twentieth Judicial Circuit charged Custodio, Irizarry, and Snider for participating in Riley's false arrest. However, despite the overwhelming evidence and Irizarry's admissions, the State Attorney did not file criminal conspiracy charges against all three Defendants, Irizarry, Custodio, and Snider. Irizarry as a former Lee County deputy was **only** charged

44

with Official Misconduct in Public Agency under Fla. Stat. § 838.022 (2023), a third degree felony.  Custodio and Snider were charged with first degree felonies for trafficking illegal drugs and conspiracy to traffic, as well third degree felonies for possession of controlled substances.

139.    Riley's false arrest and felony criminal charges would not have been possible without Marceno's insufficient policies, customs, and practices that permitted Irizarry to implement the conspiracy working directly and indirectly with Custodio and Snider.

### Civil Conspiracy

140.    Irizarry, while employed as a deputy sheriff with the Lee County Sheriff's Office, and while acting both inside and outside the course and scope of his employment, willfully and maliciously agreed and engaged in a civil conspiracy (i) between and among Custodio and Snider to plant drugs on Riley and (ii) with other deputies in the Lee County Sheriff's Office in furtherance of certain criminal, illegal, and otherwise improper acts and conduct, including but not limited to the acts specified herein including, locating the drugs discovered in Riley's vehicle, in order to confirm that Riley could be charged with possession of the drugs.

141.    In his February 12, 2022 press conference, Marceno, in his capacity as Sheriff of the Lee County Sheriff's Office, confirmed the conspiracy between

Irizarry, Custodio, and Snider against Riley when he stated, "The task force conducted a thorough investigation, revealing an elaborate **conspiracy** to plant illegal drugs in victim's vehicle and arrange a traffic stop on that vehicle after the drugs were planted". (Exhibit "23")(Emphasis added).

142.    Irizarry, Custodio, Snider, and other deputies in the Lee County Sheriff's Office agreed to conduct a stop on Riley, plant illegal narcotics, and affirm Riley's guilt through their statements and testimony in Lee County, Florida in violation of the Fourth Amendment, causing Riley to be falsely charged with criminal acts that he did not commit.  Irizarry also filed false affidavits in support of these charges and encouraged other deputies to affirm Riley's guilt.

143.    Irizarry had an agreement with Custodio to receive sexual favors and dinner in Paris, France, for his assistance in planting these illegal narcotics and arresting Riley.

### Post Arrest Activity – Expungement

144.    In October 2022, Marceno through his counsel, Kate Welch, and Tyler Lovejoy of the State Attorney's Office started communicating to expunge Riley's case file.

145.    Without Riley's knowledge or approval, on October 20, 2022, Katherine "Kate" Welch, Attorney for Lee County Sheriff's Office, and Tyler P. Lovejoy, an attorney with the State Attorney's Office of the Twentieth Judicial

46

Circuit, communicated by email agreeing to file a Motion to Expunge and Seal the

records in Riley's criminal case file.  Their email exchange provided:

> Good Morning Tyler:
>
> **I have been assigned another tricky one**.  Abbi says you are familiar with the Mark Riley case (21-CF-016912) where he was charged with trafficking and possession of narcotics due to the criminal actions of a former LCSO employee.  FLDE has expunged the record from their criminal history database.  The Clerk requires an order from the Court to expunge Mr. Riley's records from their system, similar to the Robert Ladine case (which I greatly appreciated your help on).
>
> As the SAO still has open criminal cases related to Riley's case.  I am assuming your office would not like his case expunged at this time.  I am going to file a motion to seal his case until the resolution of the related cases at which time Riley's case would be expunged.
>
> **Knowing this is another unusual situation,** would the SAO be interested in co-signing my motion or should I proceed with a non-party motion to seal and expunge?
>
> Respectfully,
>
> Kate
>
> Kate Welch
> Attorney
> Legal Services Exec. Bureau
> [Seal of the Office of the Sheriff, Lee County]

****

Tyler Lovejoy responded:

Hello,

From our perspective, Mr. Riley is eligible for the relief and should be afforded the same. His "file" has essentially been disclosed by way of discovery to the two defendants that are being prosecuted related to what happened to Mr. Riley. As such, I am not concerned there.

I recommend proceeding with a non-party motion.

Hope that helps. Have a good one.

Tyler P. Lovejoy
Circuit Court Chief
[Seal of the State Attorney's Office of the 20th Judicial Circuit]

(Exhibit "24") (emphasis added).

146.    Neither this email nor this proposed plan to file a non-party motion to expunge the criminal case file were disclosed to Riley or his criminal defense attorney, Donald Day.

**<u>Non-Party Motion to Expunge</u>**

147.    On October 20, 2022, Lee County Sheriff's Office ("LCSO") by and through their attorneys filed a "Non-Party Motion to Expunge Case". In this non-party motion, the Lee County Sheriff's Office through its counsel confirmed and recognized the conspiracy between **Irizarry, Snider, and Custodio**. The LCSO's motion provided in pertinent part (Exhibit "25") (emphasis added):

> 1.    On December 16, 2021, Riley was arrested due to a falsified official statement of former LCSO employee

48

Niko Irizarry (Irizarry) when he worked as a Deputy. **In fact, Irizarry, Charles Custodio (Custodio), and Scott Snider (Snider) were working together to arrange Riley's arrest by Irizarry for narcotics possession.**

2. On February 8, 2022, after further investigation by LCSO, it was determined that Irizarry falsified an official document used to arrest Riley.

3. On February 10, 2022, the State filed a Notice of Nolle Prosequi on Riley.

4. **On February 11, 2022, LCSO arrested Irizarry, Custodio, and Snider for their conspiracy against Riley**.

148.    In this motion to expunge, Marceno, in his capacity as Sheriff of the Lee County Sheriff's Office, confirmed the conspiracy between Irizarry, Custodio, and Snider against Riley. (Exhibit "25")

149.    On the basis of this conspiracy, Irizarry, Snider, Custodio, and other unknown deputies of the Lee County Sheriff's Office took actions in furtherance of this conspiracy to illegally stop, arrest, and prosecute an innocent person, Riley, in Lee County, Florida, without any probable cause.

150.    Riley was wrongfully arrested and incarcerated on December 16, 2021, and Riley was not released of these charges until the State Attorney's Office filed the Notice of Nolle Prosequi in Riley's false criminal case. (Exhibit "22")

151.    Riley was damaged by the acts and conduct of the Defendants as more fully provided herein.

4892-3858-1388, v. 1

## Limited Charges against Irizarry

152.    Irizarry as a former Lee County Sheriff Deputy was only charged for official misconduct under Fla. Stat.§ 838.022 (2023).  For reasons unknown at this time, the State Attorney's Office, despite the **admissions** by Irizarry and the overwhelming evidence contained in the text messages, has not charged Irizarry with any of the following crimes:

      a.  Retaliation against a witness, Fla. Stat. § 914.23 (2023) – Third Degree Felony;

      b.  Kidnapping (Stop and removal from vehicle and transport to jail) Fla. Stat. § 787.01 (2023) – First Degree Felony punishable by life;

      c.  Burglary of a conveyance (Entering vehicle with the intent to commit a crime and was armed), Fla. Stat. § 810.01 (2023) – Second Degree Felony;

      d.  Falsely reporting a crime, Fla. Stat. § 817.49 (2023) – First Degree Misdemeanor;

      e.  Perjury in an official proceeding, Fla. Stat. § 837.02 (2023) – Third Degree Felony;

      f.  Conspiracy to traffic narcotics, Fla. Stat. § 893.135(5) (2023) – First Degree Felony;

      g.  Accepting a bribe to participate in this conspiracy;

      h.  Conspiracy to obstruct justice and tampering with evidence when Irizarry told Custodio to delete text messages.

153.    Instead, the State Attorney's Office only charged Irizarry with Official Misconduct in Public Agency, Fla. Stat. § 838.022 (2023), a Third Degree Felony.

## Destruction of Evidence despite prior receipt of Notice of Preservation

154.    On October 27, 2022, one week after the filing of the Non-Party Motion to Expunge, counsel for Riley placed Marceno and counsel for the Lee

County Sheriff's Office, Katherine H. Welch, on notice to preserve all evidence.

This letter specifically advised Marceno and his counsel to preserve all documents

and evidence in Riley's file.  In pertinent part, this correspondence sent by Riley's

counsel, Michael Coleman, provided (Exhibit "26") (emphasis added):

> Dear Sheriff Marceno:
>
> Our law firm and Louis D. D'Agostino and Rachael Loukonen of Cheffy Passidomo, P.A. represent Mark Riley with regard to a dispute with Lee County Sheriff's Department, including a former deputy, Niko Irizarry and other unknown deputies involved in the false arrest of Mark Riley. We are addressing this letter to you as the Lee County Sheriff.  To the extent you have legal counsel that represents the Lee County Sheriff's Department please forward a copy of this correspondence directly to your counsel.
>
> **The purpose of this letter is to request that you as the Sheriff of Lee County, take appropriate steps to preserve documents, tangible items, and electronically stored information (ESI) that are relevant or potentially relevant to the issues in this dispute. . . .**
>
> \*\*\*
>
> This request includes all records relating to phones used by Lee County deputies relating to Mark Riley's investigation and arrest, including not only phones issued by Lee County Sheriff's Department, but any and all personal files, CAD transmissions, computer files, transmissions, and any phone that was agency issued. This request also relates to any personal phone of Irizarry as referenced in any internal investigations conducted by the Lee County Sheriff's Department.
>
> \*\*\*
>
> **This request also includes all reports, notes, affidavits, CAD entries, dispatch summaries, 911 calls, use of force**

**reports, witness statements, all video and audio recordings including but not limited to in-car, body cam, surveillance videos including but not limited to sally port, booking hall, all hallways and holding cells from November 2021 through today's date as it relates to Mark Riley.** ESI may provide an important and irreplaceable source of evidence in this case. Because of its nature, ESI is easily deleted, changed, or corrupted. . . .

**** 

**The failure to preserve and retain ESI and written documents may constitute spoliation of evidence and may subject you to legal claims for damages in addition to evidentiary and monetary sanctions.** (Exhibit "28")

155.    The express purpose of this preservation letter was to preserve any and all evidence in the Lee County Sheriff's Office's possession, custody, or control relating to Riley, Irizarry, and all of the other parties involved in Riley's false arrest.

### November 10, 2022 – Confirmation of Receipt

156.    On November 10, 2022, Marceno's office, through Shelley Traurig, Litigation Director, confirmed receipt of the October 27, 2022 notice of preservation letter. Marceno's correspondence provided (Exhibit "27"):

Re:    Riley, Mark
Lee County Case No: 21-CF-016912

Dear Mr. Coleman:

This letter acknowledges receipt of your preservation of evidence letter dated October 27, 2022. The Lee County Sheriff's Office intends to comply to the extent any such

evidence is within the care, custody and control of our agency.

Sincerely,

Shelley Traurig
Litigation Director
Legal Services Executive Bureau

## Spoliation and Destruction of Evidence

157.   Despite receiving a notice of preservation letter on October 27, 2022 and confirming receipt of that notice of preservation, the Lee County Sheriff's Office moved forward on the motion to expunge.

158.   A hearing was held on motion to expunge on November 16, 2022 at 10:00 AM in front of Judge Frank J. Porter.  Counsel for the Lee County Sheriff's Office, Katherine H. Welch, was present at the hearing. (Exhibit "28" Court Minutes from hearing held on Lee County Sheriff's Office Non-Party Motion to Expunge Doc. 52).

159.   After the hearing, the Circuit Court entered an Order on **November 16, 2022** expunging all records in Riley's case.  The impact of this Order to Expunge Case led to the elimination and destruction of evidentiary records in the care, custody, and control of the Lee County Sheriff's Office.  (Exhibit "29")

160.   Riley did not receive notice of the Non-Party Motion to Expunge Case filed by the Lee County Sheriff's Office, and neither Riley nor his counsel received notice of the hearing on this "Non-Party" motion expunging his case.

4892-3858-1388, v. 1

161.    As a direct result of the Order Expunging Case, all the documents in Riley's file were destroyed, which constitutes spoilation of evidence as a matter of law.  This spoilation of evidence is egregious especially given the fact that Riley provided a notice of preservation on October 27, 2022, which was received and then confirmed by the Lee County Sheriff's Office on November 10, 2022.  Despite Riley's notice and the obligation to preserve evidence, the Lee County Sheriff's Office moved forward on its "non-party" motion, attended the hearing on its "non-party" motion through its counsel, Katherine H. Welch, and obtained an Order Expunging the Case on November 16, 2022.

### Liability Stemming from Custom, Policy or Practice

162.    The liability against Marceno in his individual and official capacity stems from a failure of the custom, policy or practice of the Lee County Sheriff's Office, which failure caused harm to Riley and was not an isolated incident. Marceno, individually and in his official capacity, failed to implement proper customs, policies, or practices as follows:

### No Dash or Body Cameras / Videos

(a) Lee County Sheriff's Office as a matter of policy and custom has no dash cameras in its patrol vehicles or body camera equipment on its officers to immediately capture the activities of their deputies with respect to traffic stops or arrests, including the arrests of individuals charged with possession and trafficking drugs.

54

(b) Failure to have a policy in place to use dash cameras, body cameras, or videos of traffic stops and arrests, including those for drug possession and trafficking.

(c) Failure to have a policy in place to use dash cameras, body cameras, or videos of deputies searching and seizing drugs located in a vehicle during an arrest.

### Inadequate Reporting / Narcotics

(d) On information and belief, the failure to have a policy in place that requires deputies such as road patrol deputies to notify the narcotics division of potential large drug arrests for possession and trafficking.

(e) On information and belief, the failure to have a policy in place that would have required Irizarry to notify the narcotics division that he was planning a drug arrest from a reported drug trafficker in Southwest Florida.

(f) On information and belief, the failure to have adequate policies and procedures in place for Irizarry's supervisors requiring Irizarry to report to the narcotics division or his supervisor that he was planning a drug arrest from a reported drug trafficker in Southwest Florida.

(g) On information and belief, the failure to have adequate policies and procedures in place with respect to checking out unmarked cars by inexperienced and recently hired deputies such as occurred when Irizarry planned and participated in this unlawful arrest.

(h) On information and belief, the failure to have policies in effect concerning the use and reliability of confidential informants.

### Inadequate Training and Supervision

(i) On information and belief, the failure to have a policy in place to adequately train deputies to properly notify not only

55

supervisors, but the narcotics division with respect to a large trafficking arrest of a reported drug dealer.

(j) On information and belief, the failure to have proper internal rules in place to supervise deputies of the Lee County Sheriff's Office such as Irizarry from unilaterally carrying out an illegal drug arrest.

(k) On information and belief, the failure to have proper policies and procedures in place regarding the use of unmarked cars by inexperienced and recently hired deputies.

(l) On information and belief, the failure to have proper policies and procedures in place regarding a deputy's use of personal cell phones to carry out the deputy's duties and responsibilities.

(m) On information and belief, the failure to have proper policies and procedures in place to gather information and data stored or kept on a deputy's personal cell phone with respect to any use of that cell phone to carry out the deputy's duties and responsibilities such that the information and data is not available to the public through a public records request.

(n) On information and belief, the failure to have a proper policy and procedure in place regarding the use of confidential informants, including but not limited to the policies and procedures for investigating the credibility of a confidential informant, assessing the confidential informant's ties to the suspect, confirming the veracity of the information provided by the confidential informant, and tracking information received by a confidential informant.

(o) On information and belief, the failure to have adequate policies and procedures to supervise officers/deputies in Defendant, Marceno's employ.

(p) The failure to have adequate policies and procedures to expose and detect and expose officers/deputies who may engage in

criminal activity by planting drugs on innocent citizens like Riley.

(q) Policies and procedures to properly discipline officers/deputies who willfully trample on the constitutional rights of law-abiding citizens like Riley, and to prevent the type of harm described above.

(r) Participating in a cover up of illegal and criminal activity of deputies employed by the Lee County Sheriff's Office under Defendant, Marceno's leadership. This included the failure to properly arrest and charge Irizarry with criminal activity, including criminal conspiracy, battery, assault, kidnapping, and bribery.

## Inadequate Procedures / Preservation of Evidence

(s) On information and belief, the failure to have policies in effect to properly ensure the preservation of evidence upon receiving a notice to preserve all evidence in a case.

(t) On information and belief, the failure to implement the policies and procedures for the Lee County Sheriff's Office as described herein.

163. Marceno failed to comply with these duties when implementing the policies, customs, and practices described in paragraph 162, and what happened to Riley was not an isolated incident but rather arose from Marceno's failure to have adequate policies and training in place.

## Criminal Trials – Irizarry, Custodio, and Snider

164. At a bond hearing held in Defendant, Scott Snider's case, the Court questioned why Defendant, Irizarry was not charged with conspiracy. At the hearing held on April 18, 2022:

THE COURT:  How is he not charged with the conspiracy, out of curosity?

MR. DOWNEY:  The State Attorney's office has told me that after they reviewed it, they don't feel like they can charge him with conspiracy, so they've only charged him with -- with -- whatever it is that he's been charged with.

THE COURT:  Oh.

****

THE COURT:  Hmm.  I've been doing a lot of conspiracy cases and it just seems odd to me, but I don't make those choices.

(Exhibit "30").

165.    At Irizarry's sentencing hearing, Assistant State Attorney Tyler Lovejoy offered the following arguments as grounds for the Court to impose a maximum sentence (364 days) on Irizarry (Exhibit "31") (emphasis added):

> They communicated via text, Mr. Irizarry and Mr. Custodio. These conversations were flirtatious, at a minimum.
>
> * * *
>
> **And what did this law enforcement officer do? Did he go to a supervisor? His sergeant? No.  Did he take this tip about this big-time drug dealer, who had bodies on his drugs, whose drugs had resulted in deaths, and did he go to the narcotics unit of the sheriff's office? No. Did he tell another soul in his agency about what he was discussing with Mr. Custodio? No.**
>
> **He wanted the glory and the benefit to himself. So he checked out an unmarked patrol vehicle days prior to this traffic stop, days prior to the arrest of Mark Riley, never telling anyone that he was acting on a tip, instead claiming he was doing an area check for the holiday**

58

**season, instead claiming he saw Mark Riley holding a pouch in his hand. He writes these fictions down, and he arrests Mark Riley based on these fictions, impacting Mark Riley for the rest of his life.**

His actions undermine the good work of all law enforcement officers that they provide to us thanklessly day in and day out. These are the heroes that run towards danger while the rest of us run away. **Mr. Irizarry's behavior destroys the hope that the government serves and not sells out its people. He caused a private and innocent citizen to be arrested for crimes that [he] did not commit.**

### Judge Porter

166.    On May 16, 2023, the sentencing hearing occurred for Irizarry, and he was sentenced to 364 days in county jail.  Judge Porter of the Twentieth Judicial Circuit, Lee County, Florida commented (Exhibit "32") (emphasis added):

I have taken judicial notice of the court file. I have listened to evidence. I have listened to argument.  I am prepared to impose sentence, but I would be remiss if I didn't make some comments, and I am.

Mr. Irizarry, you took an oath, a very important oath to protect and defend the constitution, the laws of the State of Florida, when you became an officer.  We, as citizens, expect you to honor that oath, like I expect him to honor his oath (indicating) and him to honor his oath (indicating). You betrayed your oath.  You broke the law.  You - - you betrayed your employer, the sheriff that gave you the opportunity to be what you wanted to be since you were five years of age.  Notwithstanding all of that, probably the most important thing that you betrayed, is you betrayed the public.  Those of us that expect police officers, law enforcement officers, to be there for us when we need you.

In today's society, we see everything that's going on in America, and law enforcement has a hard enough job as it is because everybody is after them, looking for a reason to point the finger and say, "They're wrong." You should have just gotten a billboard and said, yeah, I did wrong. You added to their argument, is what I'm trying to say.

**But as it relates to this case, it's Mark Riley that you really betrayed. You caused an innocent man to go to jail. And I sat here today, even before this hearing, trying to think of the – - the things that we, as lawyers, and the public, too, but as lawyers we've - - we've read. And it's something like it's better to have - - to free a hundred guilty men than incarcerate one innocent man.** And I don't have that exactly right, but that's the gist of it.

**Mr. Riley is that man.  Mr. Riley deserved more than what you gave him.  We, the taxpayers and the citizens, deserved more than you gave us. Your former employer deserved more than you gave him. ...**

****

In Florida we have these things called sentencing guidelines.  And part of my oath said I have to follow the law.  Whether I like the law or not, I have to follow it.  And I'm going to follow the law.  I'm going to follow the guidelines.    Sometimes  I  like  these  guidelines. Sometimes I don't.   But it doesn't matter what my personal opinion is.  It's my oath.  That's what I have to rely on.  And so my oath says to follow the law.

****

So, your saving grace here today is the law.  The law keeps you out of prison.  The public trust that you violated causes me to adjudicate you guilty.  And I know that is going to affect you for the rest of your life. I realize that. And, candidly, that will probably bother me for awhile. It will.

60

### Custodio's trial

167.    In her Order Directing Clerk to Seal Juror Information dated August 22, 2023, following the conclusion of Custodio's criminal trial, Judge Maria Gonzalez stated (Exhibit "33"):

> **The facts proven at trial involved the Defendant orchestrating and conspiring with others, including a former law enforcement officer, to set up a Naples realtor by planting said narcotics in the realtor's vehicle and causing his arrest. A subsequent full investigation into the realtor's arrest revealed a criminal conspiracy, which led to the Defendant's and others' arrest.**

Because of the "unusual and extraordinary circumstances" in the Custodio matter, the Court found it "necessary in the interest of justice, to protect the integrity of the proceedings and the ongoing criminal investigation, and for the protection of the jury, to seal the names and addresses of the jurors until further order." (Exhibit "33").

168.    Defendant, Custodio was found guilty and sentenced to eighty years in prison:

- 30 years for trafficking in Fentanyl 14 grams to 28 grams.
- 30 years for conspiracy to traffic in controlled substance.
- 5 years each on four separate counts of possession of controlled substance.

(Exhibit "34").

### Judge Gonzalez

169.    At the sentencing hearing, Judge Gonzalez further commented:

THE COURT:  This is indeed, I think we can all agree. A very unique situation, a very unique case.  I've been doing – I've been in the criminal justice system thirty-three years, as a Judge almost twenty, and I have never encountered a case of this magnitude.  It was bizarre, it was weird, it was over the top, and just absolutely unbelievable. Unbelievable at the actions that the Defendant took in this case out of revenge, out of hatred, out of greed, to ruin the lives of other people.  I have never seen anything like it.

But not only did you ruin Mr. Riley's life, and his family, and the other people that you brought into your web of criminal activity, but you -- which, of course, you had no right to do, but you also involved a lot of people, including people in our own criminal justice system, that were unbeknownst to them, participants in your scheme to ruin someone else's lives, the deputies, the people that booked you in -- **well, not the deputy involved, Irizarry, he is -- he is culpable as -- as he is, but the people after you were booked, that booked you in, that booked Mr. Riley in, . . .**

****

If you want some type of redemption in your life, you are going to have a long time to think about that and to turn your life around and change your ways, but you're going to -- you're going to be in prison for quite awhile.  These are very, very serious charges.  And everyone owes Mr. Riley an apology. And, Mr. Riley, on behalf of the -- the judicial system, I apologize to you -- . . .

****

Mr. Custodio, you have been convicted by this Jury on a charge of trafficking in Fentanyl, fourteen grams or more.  That's Count 1. You are hereby sentenced to thirty years in the Department of Corrections with credit for fifty-six days you have already served.  There is a minimum mandatory of fifteen years.  You will be ordered to pay a $100,000.00 fine.

62

On Count 2, which is the possession of controlled substance, you will be sentenced to five years in the Department of Corrections, credit for fifty-six days already served. And I will impose a $5,000.00 fine.

On Count 3, will be five years in the Department of Corrections, a $5,000.00 fine, credit for fifty-six days served.

On Count 4, these are all controlled substances, possession of a controlled substance, third degree, five years in the Department of Corrections, credit for fifty-six days already served, a $5,000.00 fine.

On Count 5, will be five years in the Department of Corrections, credit for fifty-six days, a $5,000.00 fine.

And on Count 6, which is the conspiracy, will be thirty years in the Department of Corrections, credit for fifty-six days already served, a minimum mandatory fine -- I'm sorry, a minimum mandatory of fifteen years with a $100,000.00 fine.

(Exhibit "35").

170.    Defendant, Marceno and the State Attorney's Office continued in its failure to charge Irizarry as part of this criminal conspiracy despite the findings by the jury and the ruling by the court in the Custodio trial.

**Yale Freeman**

171.    On September 5, 2023, Attorney Yale Freeman who represented Mark Riley as a victim wrote to the State Attorney's Office. This letter was written after the Custodio trial and the Niko Irizarry sentencing hearing. Attorney Freeman implored the State Attorney's Office to charge Lee County Sheriff Deputy Niko Irizarry with criminal conspiracy stating:

63

Law enforcement officer, Niko Irizarry ("Irizarry"), conspired with two civilians, Charles Custodio and Scott Snider, to plant drugs (fentanyl, meth, oxycodone, Xanax, amphetamine, and MDMA) in Mark Riley's vehicle for the purpose of having Mark Riley arrested and convicted on severe criminal charges. Both Custodio and Snider were charged with drug trafficking, while Irizarry was only charged and pleaded to official misconduct, Fla. Stat. § 838.022, for filing a false police report. There is substantial evidence (especially the evidence presented during the Custodio trial) that Irizarry also committed armed drug trafficking, drug trafficking, conspiracy to commit drug trafficking, fabrication of evidence, false imprisonment, drug possession, retaliation against a witness, kidnapping, armed burglary, burglary of a conveyance, false reporting of a crime, perjury in an official proceeding, bribery and racketeering.

**** 

In the **Order Directing Clerk to Seal Juror Information**, dated August 22, 2023, Judge Maria E. Gonzalez (the Judge who presided over the Custodio trial) stated at paragraph 2 (See attached):

**The facts proven at trial involved the Defendant orchestrating and conspiring with others, including a former law enforcement officer, to set up a Naples realtor by planting said narcotics in the realtor's vehicle and causing his arrest. A subsequent full investigation into the realtor's arrest revealed a criminal conspiracy, which led to the Defendant's and other's arrest.**

(Exhibit "36").

172.    In that same letter, case law was also provided to the State Attorney confirming the law that there is no constitutional procedural bar that would prevent the State from filing these charges.   At page 3 of that letter, Attorney Freeman advised the State Attorney's Office:

> **There is no constitutional or procedural bar that would pre-vent the State from filing drug trafficking charges (or other charges) against Irizarry in this instance.** First, the double jeopardy clause of the Fifth Amendment1 does not prevent suc-cessive or subsequent prosecution for separate offenses arising from the same criminal transaction. *See e.g., Denezpi v. United States*, 142 S. Ct. 1838, 1849 (2022) ("[T]he Clause does not bar successive prosecutions of distinct offenses, even if a single sov-ereign prosecutes them."). Second, there is no procedural rule preventing the State from filing the drug trafficking charges in this instance, because there was no trial on the official miscon-duct charge against Irizarry. . . ,

(Exhibit "36").

173. Despite the conclusive findings by the jury in the Custodio trial, De-fendant, Irizarry was not charged with criminal conspiracy.

### Riley's Public Records Requests

174. Riley served public records requests on the State Attorneys' Office and on the Lee County Sheriff's Office. Of the records received, the documents were redacted to remove information that should not have been redacted. For example, references to Irizarry's personal cell number that would show Irizarry's communications with Custodio and others leading up to and after Riley's arrest.

175. The Lee County Sheriff's Office has failed to adequately and fully respond to Riley's public records requests, refusing to provide documents that should be readily available to the public. As an example, the communications between Custodio and Snider, and all of the communications between the State Attorneys' Office and the Lee County Sheriff's Office regarding Riley.

176.    Riley has retained the undersigned counsel to represent him in this matter and is obligated to pay them a reasonable fee for their services for which the Defendants are responsible pursuant to 42 U.S. C. § 1988 (2023).

<u>**Count I**</u>

<u>**Common Law False Imprisonment/Arrest**</u>
<u>**(Marceno)**</u>

Riley hereby sues Defendant, Marceno, individually and in his official capacity as Sheriff of Lee County, Florida, and alleges:

177.    Riley hereby realleges paragraphs 1-176 hereinabove as if fully set forth herein.

178.    This is an action against Defendant, Marceno individually and in his official capacity as Sheriff of Lee County, Florida for common law false imprisonment/arrest.  This count is pled in the alternative and for the purposes of this count, Irizarry was acting within the course and scope of his employment as a certified deputy with Marceno as Lee County Sheriff.

179.    Riley is entitled to relief against Marceno in that he, through his employees, and/or agents, intentionally and unlawfully detained and restrained Riley when Riley was unlawfully seized and deprived of his liberty without any reasonable cause or color of authority and maintained such complete restraint and deprivation for a period of time.

180.    This unlawful restraint of Riley's liberty was also accomplished by Marceno confining Riley, through his agents, to an area in which he did not wish to be confined.

181.    Riley was further restrained by Marceno's use, through his agents, of coercive words and threats of force as well as actual force and immediate means of coercion against Riley so that Riley was restrained and deprived of liberty without any justification and in the absence of probable cause.

182.    Marceno, through his agents, planted drugs, drug paraphernalia, and other items to falsely arrest Riley within Lee County, Florida.  Marceno knew, or should have known, of the actions of his deputies in affecting this illegal and unlawful arrest.

183.    At all times material to this action and at all times during which Riley was unlawfully restrained, Riley was restrained against his will and without consent so that he was not free to leave his place of confinement.

184.    As a direct and proximate cause of Marceno's actions, Riley has incurred damages, which damages include:  mental anguish, pain and suffering, bodily injury, loss of capacity for the enjoyment of life, embarrassment, humiliation, loss of reputation, lost employment opportunities, and expenses, as well as punitive damages against Marceno in his individual capacity.  These damages have occurred at present, in the past, and will most likely occur in the

future.  Marceno is jointly and severally liable to the Riley along with all the Defendants named herein.

## Count II

## Common Law False Imprisonment/Arrest
## (Irizarry)

Riley hereby sues the Defendant, Irizarry, and alleges:

185.   Riley hereby realleges paragraph 1-176 hereinabove as if fully set forth herein.

186.   This is an action against the Irizarry for common law false imprisonment/arrest.

187.   Riley is entitled to relief against Irizarry in that he intentionally and unlawfully detained and restrained Riley when Riley was unlawfully seized and deprived of his liberty without any reasonable cause or color of authority and maintained such complete restraint and deprivation for a period of time.

188.   This unlawful restraint of Riley's liberty was also accomplished by Irizarry confining him to an area in which he did not wish to be confined.

189.   Riley was further restrained by Irizarry's use of coercive words, threats of force, as well as actual force, and immediate means of coercion so that Riley was restrained and deprived of his liberty.  Irizarry restrained Riley in this false arrest without justification and in the absence of probable cause.

190.    At all times material to this action and at all times during which Riley was being unlawfully restrained, Riley was restrained against his will and without consent, so that he was not free to leave his place of confinement.  Irizarry was aware of the planting of drugs by Custodio and a third party (Snider) with a value of $150,000 for purposes of Irizarry falsely arresting Riley and subjecting him to multiple felony criminal charges.

191.    As a direct and proximate cause of Irizarry's actions, Riley has incurred damages, which damages include:  mental anguish, pain and suffering, bodily injury, loss of capacity for the enjoyment of life, embarrassment, humiliation, loss of reputation, lost employment opportunities, expenses, and punitive damages. These damages have occurred at present, in the past, and will most likely occur in the future.  Defendant, Irizarry is jointly and severally liable to the Riley along with all Defendants named herein.

## Count III

### Assault and Battery
### (Irizarry)

Riley hereby sues the Defendant, Irizarry, and alleges:

192.    Riley hereby realleges paragraph 1-176 hereinabove as if fully set forth herein.

193.    Irizarry willfully admitted the acts described herein and these actions amount to assault and battery under Florida law.

194.   As a direct result of these actions, Riley has incurred damages, including: mental anguish, pain and suffering, bodily injury, loss of capacity for the enjoyment of life, embarrassment, humiliation, loss of reputation, lost employment opportunities, expenses, and punitive damages. These damages have occurred at present, in the past, and will most likely occur in the future. Defendant, Irizarry is jointly and severally liable to the Riley, along with all the Defendants named herein.

## Count IV

### Civil Conspiracy
### (Irizarry, Marceno, Custodio, and Snider)

Riley hereby sues the Defendants, Irizarry, Marceno, individually and in his capacity of Sheriff of Lee County, Florida, Custodio, and Snider and alleges:

195.   Riley hereby realleges paragraph 1-176 hereinabove as if fully set forth herein.

196.   This is an action against Irizarry, Marceno, Custodio, and Snider for a civil conspiracy to violate Riley's constitutional rights and other rights.

197.   Irizarry, Custodio, Snider, and other deputies agreed to commit and did commit unlawful and tortious acts against Riley by having him arrested, and they acted collectively in a sinister plan to plant illegal drugs in Riley's vehicle and to have him arrested.

198.    Irizarry, Marceno, Custodio, Snider, and other unnamed deputies, conducted an illegal search of Riley's vehicle searching for drugs, narcotics, and other contraband illegally planted in his vehicle.  Irizarry, Marceno, Custodio, Snider, and other deputies, collectively as part of this conspiracy, arrested and detained Riley causing the malicious criminal prosecution of Riley, making illegal false sworn statements in official documents and reports regarding Riley, and violating Riley's civil and constitutional rights.

199.    Irizarry, as a result of Marceno's failure to have proper policies, customs, and procedures in place, conspired together with Custodio and Snider to plant illegal drugs and to have Riley detained, prosecuted, and incarcerated for which there was no justification or legal basis.

200.    As a direct result of this conspiracy, Riley was charged with a crime and was facing a potential jail sentence with a maximum term of 60 years in prison, and with a minimum sentence of time fixed at 25 years.

201.    Marceno also failed to charge Irizarry with any of the following charges, despite Irizarry's admissions to Marceno and other deputies working for Marceno:

    (a)    Conspiracy to traffic narcotics.  Fla. Stat. § 893.135(5) (2023) – first degree felony.

    (b)    Perjury in an official proceeding.  Fla. Stat. § 837.02 (2023) – third degree felony.

    (c)    Kidnapping (stop and removal from car and transport to jail). Fla. Stat. § 787.01 (2023) – first degree felony punishable by life.

     (d)    Retaliation against a witness.  Fla. Stat. § 914.23 (2023) – third degree felony.

     (e)    Accepting a bribe to participate in this conspiracy.

     (f)    Conspiracy to obstruct justice and tampering with evidence when Irizarry told Custodio to delete text messages.

202.    Marceno allowed Irizarry to be charged with a third degree felony for "official misconduct" based on the false statements that Irizarry made in his investigative report against Riley, which led to significant felony charges against Riley.

203.    Marceno and the Sheriff's Office knew of the undisputed evidence of Riley's innocence after Riley, through his private investigators, investigated the incident and collected evidence in support of his innocence.  All this evidence was presented to the Sheriff's Office who had not conducted any investigation or otherwise sought to investigate how a road patrol deputy (Irizarry) was able to check out an unmarked car and make an arrest of a drug trafficker without the narcotics division having any knowledge of Riley.

204.    Marceno and the Lee County Sheriff's Office did eventually review the information provided by Riley's private investigators and confirmed Riley's innocence, resulting in the dropping of all charges against Riley.

205.    However, once the dishonest deputy (Irizarry) had been exposed, Marceno then worked to cover up any evidence of his wrongdoing by expunging Riley's case and otherwise thwarting Riley's requests for public records by

4892-3858-1388, v. 1

redacting information from the requested records and by refusing to turn over records such as, for example, the communications between Custodio and Snider.

206.   While the charges were eventually dismissed, Riley has incurred substantial damages.

207.   As a direct and proximate result of the unlawful and tortious acts and omissions taken by the Defendants, Riley has suffered violations of his civil and constitutional rights, unlawful seizures of Riley's person and property, loss of liberty, mental anguish, emotional distress, expenses, loss of benefits, embarrassment, humiliation, damage to reputation, illness, lost wages, loss of capacity for the enjoyment of life, and other tangible and intangible damages. These damages are continuing and are permanent.  Plaintiff is entitled to an award of damages, including punitive damages against the Defendants, individually, and jointly and severally.

### Count V

### False Arrest 42 U.S.C. § 1983 (2023)
### (Defendant, Marceno individually and in his official capacity as
### Sheriff of Lee County, Florida)

Riley hereby sues the Defendant, Marceno, individually and in his official capacity as Sheriff of Lee County, Florida, and alleges:

208.   Riley hereby realleges paragraphs 1-176 hereinabove as if fully set forth herein.

209.   This count is a claim against Marceno, individually and in his official capacity as Lee County Sheriff, who through his officers, deputies, employees, and agents violated Riley's rights under the Fourth Amendment to the United States Constitution to be free from unlawful and false arrest.  These violations were the type and character as to which any reasonable law enforcement agency and/or officer would be aware.

210.   At all times pertinent hereto, Marceno was responsible for the deputies and employees working with the Lee County Sheriff's Office, including supervising, overseeing, training and establishing policies, customs and procedures to conform their conduct to the United States Constitution and Florida law.

211.   At all times, Marceno was responsible for:

(a) Creating, adopting, and implementing rules, regulations, orders, policies, and procedures for the proper and effective hiring, supervising, and retaining of law enforcement officers who do not have a propensity towards lying, planting evidence, falsifying documents and affidavits, carrying on sexual relationships with convicted felons and "confidential informants" in furtherance of committing criminal acts in order to affect an illegal arrest;

(b) Creating, adopting, and implementing rules, regulations, orders, policies, and procedures for the proper and efficient training of law enforcement officers in a way and to an extent necessary to ensure that the officers are properly completing probable

cause affidavits and not planting evidence on citizens in Lee County, Florida;

(c) Creating, adopting, and implementing rules, regulations, orders, policies, and procedures for proper policing, eliminating corruption in his ranks, and to ensuring that his officers/deputies are properly stopping citizens with reasonable suspicion and arresting with probable cause;

(d) Creating, adopting, and implementing rules, regulations, orders, policies, and procedures for the proper and efficient supervision, control, discipline, and assignment of law enforcement officers in a way and to an extent necessary to ensure that citizens will not be subject to being falsely arrested;

(e) To implement rules, regulations, policies, orders, and procedures for the elimination or reduction of instances of untruthfulness including the unlawful arrest in instances of corroboration or ratification of untruthful accounts of criminal activities.

212.    Through his officers, employees, and agents, and through his own actions and inactions, Marceno misused his powers, possessed by virtue of state law and made possible only because Marceno, his officers, employees, and agents were clothed with the authority of state law.  The violations of Riley's rights as described above occurred under color of state law and are actionable under 42 U.S.C. § 1983 (2023).

213.    The foregoing actions of Marceno were taken in bad faith, with malicious purpose and in a manner exhibiting a willful and wanton disregard of

human rights, safety and property, and were engaged in without any lawful justification and in the absence of probable cause. Marceno knew or should have known that there was no probable cause or other legal justification to arrest Riley given the circumstances present with Marceno's deputies and other personnel, including but not limited to Irizarry, who conspired with Custodio and Snider to assist in this illegal traffic stop, planting illegal drugs and drug paraphernalia, and other contraband in Riley's vehicle.

214. Marceno further acted in bad faith and with malicious purpose in attempting to cover up these crimes committed by Irizarry, who was a certified deputy and employed by Marceno, by minimizing charges against Irizarry despite the overwhelming evidence, and by having other agents participate in the destruction of evidence relevant to this matter.

215. Marceno was aware or should have been aware of these false statements made by Irizarry, due to the failure of Marceno to properly implement internal rules, procedures, and training regarding reporting requirements within his division as applied in policies and practices applied to all deputies of Lee County, Florida. To the extent that proper internal procedures, guidelines, reporting requirements, and training procedures were in place, this could and would have prevented the false arrest of Riley.

76

216.    Based upon on the facts presented to Marceno, through his officers, employees, and agents and applicable law, no reasonable law enforcement agency or officer could have concluded that there existed any probable cause to arrest Riley.  The law is well settled and established that the actions of Marceno, his delegates, deputies, officers, employees, and agents constituted false arrest under the Fourth Amendment to the United States Constitution at the time the actions were engaged in as described herein.

217.    The actions or inactions of Marceno as set forth in part above constituted deliberate indifference and/or reckless disregard for the constitutional rights of Riley.

218.    Marceno, with deliberate indifference, failed to implement adequate hiring and supervisory procedures – or implemented no such policies or procedures – to prevent the harm that was caused to Riley.

219.    As a direct result of the conduct described above and in paragraphs 164-165, Riley was injured.  Marceno was deliberately indifferent in failing to train his officers in basic human dignity which resulted in violations of Riley's constitutional rights.

220.    Marceno was deliberately indifferent in hiring, retaining, supervising Irizarry and other deputies in this matter.

4892-3858-1388, v. 1

221.    Marceno acted with deliberate indifference to the possibility of false arrest by his deputies, has encouraged the well-settled policy, practice, and custom of these false arrests caused by planting drugs and other illegal things on Riley in Lee County, Florida.

222.    Marceno, acted with deliberate indifference, as he either failed to investigate or require some serious investigation by the Lee County Sheriff's Office into Irizarry as evidenced by the nominal charge against Irizarry.  Irizarry was part of a criminal and civil conspiracy to work together with other deputies, Custodio and Snider to plant illegal drugs Riley's vehicle in Lee County, Florida and to falsely arrest Riley.

223.    Marceno is attempting to shield the Lee County Sheriff's Office by minimizing the charges presented to the State Attorney's Office as it relates to Irizarry, who was clearly part of this criminal and civil conspiracy to plant drugs on Riley and violate Riley's constitutional rights.

224.    Marceno, as the final policymaker and through his delegated final decisionmakers, acting under the color of state law, failed to supervise and investigate Irizarry and other officers, deputies, employees, and agents as alleged herein and was deliberately indifferent to their training and supervision, which resulted in a violation of Riley's constitutional rights.  Marceno's failure to supervise and investigate as provided herein constitutes a willful failure to

78

implement or enforce Marceno's policies and law which resulted in a deliberate indifference to the constitutional rights of Riley as summarized herein.

225.    The actions and inactions of well-settled policy, custom, practice, and procedures referenced above are the moving force behind the violation of Riley's rights. Marceno was grossly negligent, reckless, and/or deliberately indifferent to Riley's health, safety, and welfare in that Marceno assented to the failure to properly train, supervise, control, and conduct a proper investigation into the prior conduct and background of Irizarry. Marceno failed to screen and review for continued employment and failed to learn that Irizarry was engaging in a sexual relationship with a convicted felon (Custodio) while employed by the Lee County Sheriff's Office . As a direct result, Marceno knew or should have known that Irizarry would act unlawfully, and Marceno failed to stop his actions resulting in the violation of Riley's civil rights.

226.    As a direct and proximate cause of Marceno's actions, Riley has incurred damages, which include: grave mental anguish, pain and suffering, loss of capacity for the enjoyment of life, embarrassment, humiliation, lost wages, intangible losses, expenses, and loss of reputation, as well as punitive damages against Marceno in his individual capacity. These damages have occurred at present, in the past, and will most likely occur in the future.

### Count VI

### False Arrest Brought Under 42 U.S.C. § 1983 (2023)
### (Irizarry)

Riley hereby sues the Defendant, Irizarry, and alleges:

227.   Riley hereby realleges paragraphs 1-176 hereinabove as if fully set forth herein.

228.   This is a claim against Irizarry, who, individually, and in tandem with the other Defendants, violated Riley's rights under the Fourth Amendment to the United States Constitution to be free from false arrest.  These violations were the type and character as to which any reasonable law enforcement agency or officer should and would be aware.

229.   Irizarry misused his power possessed by virtue of state law and made possible only because he was clothed with the authority of state law.  The violation of Riley's rights as described above occurred under color of state law and are actionable under 42 U.S.C. § 1983 (2023).

230.   Irizarry's actions were in bad faith, with malicious purpose and in a manner exhibiting willful and wanton disregard of human rights, safety, and property and were engaged in, without any lawful justification, and in the absence of probable cause.

231.   Irizarry knew or should have known that there was no probable cause to arrest Riley given the circumstances.

232.    Irizarry, working together with Custodio and Snider, illegally possessed and planted illegal drugs, controlled substances, narcotic equipment, and drug paraphernalia on Riley.

233.    Irizarry, working with other Lee County deputies, arranged and organized a stop of Riley's vehicle which included the coordinated arrest of Riley. This included the use of a K-9 dog to find the illegal drugs that were planted in Riley's vehicle, which were comprised of $150,000 worth of fentanyl and other illegal drugs subjecting Riley to potentially 65 years in prison.

234.    Irizarry falsified sworn statements, affidavits, and any other documents and participated in this civil and even criminal conspiracy working directly with Custodio and Snider, under the color of state law with the Lee County Sheriff's Office, in order to participate in a sexual relationship with Custodio, and to go to Paris, France with Custodio.

235.    Irizarry's participation in the civil and criminal conspiracy, working together with Custodio and Snider, led to the false arrest and malicious prosecution of Riley in direct violation of Riley's constitutional rights as provided under the Fourth Amendment to the United States Constitution.

236.    Irizarry is a person under applicable law and liable to Riley for the violation of his legal and constitutional rights.

237.    Based upon the facts presented, no reasonable law enforcement officer could have concluded that there existed any probable cause to arrest Riley. The law is settled that the actions of Irizarry, working together with Snider and Custodio, constituted false arrest under the Fourth Amendment to the United States Constitution at the time the actions were engaged in as described herein.

238.    The actions or inactions of Irizarry constituted a deliberate, indifferent, or reckless disregard for the safety of Riley and disregarded any risks to Riley's health and safety.

239.    As a direct and proximate cause of Irizarry's actions, Riley has incurred damages which include: grave mental anguish, pain and suffering, loss of capacity for the enjoyment of life, embarrassment, humiliation, loss of reputation, expenses, and the loss of other emoluments.  These damages have occurred at present, in the past, and will most likely occur in the future.  Riley is entitled to punitive damages.

## Count VII

## Common Law Malicious Prosecution
## (Irizarry, Custodio, Snider, and Marceno)

Riley hereby sues the Defendants, Irizarry, Custodio, Snider, and Marceno, and alleges:

240.    Riley hereby realleges paragraphs 1-176 hereinabove as if fully set forth herein.

241.    This count asserts claims against the Defendants, Irizarry, Custodio, Snider, and Marceno, individually and in his official capacity, for malicious prosecution and is pled in the alternative.

242.    Irizarry Custodio, Snider, and Marceno caused the commencement and/or continuation of criminal proceedings against Riley subject to this count. These proceedings had bona fide terminations in Riley's favor in that all charges against Riley were dropped, dismissed, or otherwise resolved in Riley's favor.

243.    Riley, through his private investigators determined that all the charges against Riley were fabricated, and Riley presented all this evidence to not only Marceno, but also the State Attorney's office.  That information eventually led to all charges against Riley being dropped, dismissed and resolved in Riley's favor.

244.    Marceno participated in this malicious prosecution by participating in a cover up of the illegal activities of Irizarry.

245.    Marceno had in his possession copies of all text messages exchanged between Irizarry and Custodio relating to their conspiracy and plan to plant drugs on Riley and to arrest him on false trafficking charges.

246.    There was no probable cause or reasonable basis in fact or in law for Irizarry and Custodio, with the assistance of Snider, to cause the commencement of these criminal proceedings against Riley.

247.    Irizarry and Custodio, intentionally and with malice in initiating the criminal proceedings against Riley subject to this count, as well as in making the arrest of Riley, knew that their actions against Riley were not supported by even arguable probable cause as they intentionally planted the drugs in Riley's vehicle.

248.    Marceno assisted Irizarry and Custodio in participating in a cover up of all of these activities and by failing and refusing to recognize the overwhelming evidence in support of Riley's innocence.

249.    As a direct and proximate cause of Marceno, Irizarry, Custodio, and Snider's actions, Riley has incurred damages, which damages include mental anguish, pain and suffering, loss of capacity for the enjoyment of life, embarrassment, humiliation, bodily injury, expenses, and loss of reputation. These damages have occurred at present, in the past, and will most likely occur in the future.  Riley is also entitled to punitive damages against the Irizarry, Snider, Custodio, and Marceno, in his individual capacity, under this count.

## Count VIII

### Negligence
### (Marceno)

Riley hereby sues the Defendant, Marceno, individually and in his official capacity as Sheriff of Lee County, Florida, and alleges:

250.    Riley hereby realleges paragraphs 1-176 hereinabove as if fully set forth herein.

84

251.   This count is a claim against Marceno for common law negligence. Marceno knew or should have known that Riley was within a zone of risk relating to contact with his agents and employees, which included deputies, such as Irizarry.

252.   Marceno owed a duty of care to Riley due to the nature of the relationship between Riley and Marceno.  Marceno had a special relationship with Riley and, consequently, a duty of care was attendant to that relationship as Sheriff of Lee County, Florida. Alternatively, legal duties devolved upon Marceno because Riley was in the foreseeable zone of risks to be harmed by the intentional actions described in this lawsuit.

253.   Marceno breached his duty to properly supervise his employees and agents to ensure the safety of Riley and/or to properly investigate the circumstances and/or tortious activity by its deputies.

254.   Marceno's actions were "operational" functions, i.e., functions that were not necessary to or inherent in policy making or planning, that merely reflected secondary decisions as to how policies or plans were to be implemented.

255.   As a direct and proximate result of this breach of duty and the above unlawful acts and admissions, Riley sustained economic damages, including expenses, lost income, sustained emotional pain, anguish, humiliation, insult, indignity, loss of self-esteem, inconvenience and hurt, all because of the actions of

Marceno and his deputies, Irizarry and others, and Riley is therefore entitled to compensatory damages.

## Count IX

## Common Law Negligent Hiring, Retention Training, and Supervision (Marceno)

Riley hereby sues the Defendant, Marceno, individually and in his official capacity as Sheriff of Lee County, Florida, and alleges:

256.   Riley hereby realleges paragraphs 1-176 hereinabove as if fully set forth herein.

257.   This count is a claim against the Defendant, Marceno for negligent hiring, retention, training, and supervision.

258.   Marceno breached his duty to properly hire, supervise, train, and retain Irizarry and other officers, employees, and agents who participated in this conspiracy to plant drugs on Riley and to initiate a false arrest, stop, and prosecution of Riley.

259.   The breach of duty to properly hire, retain, train, and supervise Irizarry and other officers, employees, and agents resulted in damages and injury to Riley that Marceno knew or should have known that the actions, admissions, and derelictions of officers, employees, and agents could cause injury to Riley.

260.    Marceno breached his duties to hire and/or maintain the employment of employees who were fit for the duties they performed and to supervise and train his employees and agents.

261.    As a direct and proximate result of the unlawful acts and admissions described above, Riley sustained damages, including emotional pain, anguish, humiliation, insult, indignity, and loss of self-esteem.

## Count X

### Intentional Infliction of Emotional Distress
### (Irizarry, Custodio and Snider)

Riley hereby sues the Defendants, Irizarry, Custodio, and Snider and alleges:

262.    Riley hereby realleges paragraphs 1-176 hereinabove as if fully set forth herein.

263.    This count involves claims against Defendants, Irizarry, Custodio, and Snider for the intentional infliction of emotional distress.

264.    The conduct of Irizarry, Custodio, and Snider was extreme and outrageous. They instigated and coordinated a conspiracy to plant drugs on Riley and have him arrested for false felony charges. Such conduct is shocking to the conscious of a reasonable person and goes beyond all bounds of decency.

4892-3858-1388, v. 1

265.    Their conduct was the proximate cause of Riley's emotional distress and Riley's emotional distress was severe.  The conduct of Irizarry, Custodio, and Snider constitutes the actionable tort of intentional infliction of emotion distress.

266.    Irizarry, Custodio, and Snider maliciously and intentionally caused Riley's emotional distress by making false statements to cause Riley to be unjustifiably arrested, imprisoned, and prosecuted.   These actions by these Defendants were taken in bad faith and with a malicious purpose and a willful disregard for Riley's rights.

267.    s a direct and proximate result of these Defendants' unlawful acts and admissions, Riley was injured and sustained economic damages, including lost income, lost prestige, lost potential employment, lost good standing in the community, and he has lost his capacity for enjoyment of life, sustained severe emotional pain, anguish, humiliation, insult, indignity, loss of self-esteem, inconvenience, and hurt because of Irizarry, Custodio, and Snider's actions and is entitled to compensatory damages.   Riley's damages are continuous, have occurred in the past, are incurring in the present, and will continue in the future. Riley is also entitled to recover punitive damages.

## Count XI

## Fourteenth Amendment Violations
### (Marceno)

Riley hereby sues the Defendant, Marceno, individually and in his official

capacity as Sheriff of Lee County, Florida, and alleges:

268.    Riley hereby realleges paragraphs 1-176 hereinabove as if fully set

forth herein.

269.    Pursuant to U.S.C. § 1983 (2023), this count is against the Defendant,

Marceno for abuse of power in violation of Riley's property and liberty interest

under the due process clause of the Fourteenth Amendment.  This count is alleged

in the alternative and both the procedural and substantive Due Process rights of

Riley are implicated, and the conduct alleged herein is outrageous and shocking

to the conscience.

270.    Marceno, as Sheriff of Lee County, violated the substantive and

procedural due process clause of the Fourteenth Amendment by allowing,

conducting, and using this illegal traffic stop and planting of drugs, narcotic

devices, and any other contraband in Riley's vehicle.

271.    Marceno, through his inadequate policies, procedures, and customs,

participated in illegally arresting and detaining Riley causing the malicious

criminal prosecution of Riley, making alleged false sworn statements in official

documents regarding Riley, and violating the civil and constitutional rights of

Riley against illegal search and seizure of his person and property, and his illegal and improper detention, prosecution and incarceration for which there was no justification or illegal basis.

272.    There was no process available to Riley to prevent and stop Marceno, through Irizarry and other officers, employees, and agents, from taking these illegal actions against Riley.  The actions against Riley were taken knowingly, maliciously, and unlawfully and under color of state law.

273.    Marceno misused and abused his power possessed by virtue of state law and made possible only because he was clothed with the authority of state law.  The violation of Riley's rights occurred under color of state law and is actionable under 42 U.S.C. § 1983 (2023).

274.    Marceno is a person under the applicable law and is liable to Riley for violation of legal and constitutional rights. Marceno delegated final policymaking to Irizarry and other officers, employees, and agents to make the decisions that adversely affected  the Riley.

275.    Marceno acted in bad faith and with malicious purpose, acting through Irizarry, in a manner exhibiting wanton and willful disregard for human rights, safety, and property.  Marceno was deliberately indifferent in failing to properly train Irizarry and other officers, employees, and agents to prevent the

harm that was caused to Riley, including the failure to implement or enforce adequate policies and procedures as identified above in paragraphs 164-165.

276. At all times, Marceno was responsible for:

(a) Creating, adopting, and implementing rules, regulations, orders, policies, and procedures in the proper and effective hiring, supervising, and retaining of law enforcement officers who do not have a propensity towards lying, planting evidence, and falsifying probably cause affidavits to affect arrest.

(b) Creating, adopting, and implementing rules, regulations, orders, policies, and procedures for the proper and efficient training of law enforcement officers in a way and to an extent necessary to ensure that the officers are properly completing probable cause affidavits and not planting evidence on citizens in Lee County, Florida;

(c) Creating, adopting, and implementing rules, regulations, orders, policies, and procedures for proper policing, enduring the elimination of corruption in his ranks and to ensure that his officers/deputies are properly stopping citizens with reasonable suspension and arresting with probable cause;

(d) Creating, adopting, and implementing rules, regulations, orders, policies, and procedures for the proper and efficient supervision, control, discipline, and assignment of law enforcement officers in a way and to an extent necessary to ensure that citizens will not be subject to being falsely arrested;

(e) To implement rules, regulations, policies, orders, and procedures for the elimination or reduction of instances of untruthfulness, including the unlawful

arrest in instances of corroboration or ratification of
untruthful accounts of criminal activities.

277.    Through Marceno's officers, employees, and agents and through his
own actions and inactions, Marceno misused his powers possessed by virtue of
state law and made possible only because Marceno, his officers, employees, and
agents were clothed with the authority of state law.  The violations of Riley's rights
as described above occurred under color of state law and are actionable under 42
U.S.C. § 1983 (2023).

278.    The actions of Marceno were taken in bad faith with malicious
purpose and in a manner exhibiting willful and wanton disregard of human rights,
safety, and property, and were engaged in, without any lawful justification, and
in the absence of probable cause.

279.    Marceno knew or should have known through Irizarry that there was
no probable cause or other legal justification to arrest Riley given the
circumstances present with his deputies and other personnel, including but not
limited to Irizarry, who engaged in a scheme to plant illegal drugs on Riley in Lee
County, Florida, and to make false statements and probable cause affidavits for
the unlawful search and seizure of Riley.

280.    Based upon the facts presented to Marceno, through his officers,
employees, and agents, and applicable law, no reasonable enforcement agency or
officer could have concluded that any probable cause existed to arrest Riley. The

law is settled and established that the actions of Marceno's delegates, deputies, officers, employees, and agents constituted false arrest under the Fourth Amendment in the United States Constitution at the time the actions were engaged in.

281.   The actions or inactions of Marceno, as provided above, constituted a deliberate indifference and a reckless disregard for the constitutional rights of Riley.

282.   Marceno was deliberately indifferent in failing to train his officers in basic human dignity which resulted in constitutional violations as summarized herein.

283.   Marceno was deliberately indifferent in hiring, retaining, and supervising Irizarry and other deputies.

284.   Marceno acted with deliberate indifference to the possibility of false arrest and detentions by his deputies and encouraged the well-settled policy, practice, or custom of disregarding constitutional rights to plant drugs, to make illegal stops and false arrests, and to suppress the truth through false affidavits and reports.

285.   Marceno, individually and in his official capacity through delegated final decisionmakers, acted under color of state law and failed to supervise, investigate and discipline Irizarry and other officers, deputies, employees, and

agents as alleged herein and was deliberately indifferent in their training and supervision, the results which ended in constitutional violations against the Riley.

286.    The failures attributed to Marceno was a moving force or proximate cause of the injuries to Riley.

287.    The actions and inactions of the well-settled policies, custom, practice, and procedures summarized herein were the moving force behind the violation of Riley's rights. Marceno was grossly negligent, reckless, and/or deliberately indifferent to the health, safety, and welfare of Riley in that Marceno assented to the failure to properly train, supervise, control, and conduct proper investigations into Irizarry. As a result, Marceno knew or had reason to know that Irizarry would act unlawfully.

288.    The actions of Marceno were willful, wanton, and a reckless disregard of Riley's rights and were taken without any legal justification.  Marceno knew or should have known that his deputies were abusing their power in violation of both the United States Constitution and federal law.

289.    As a direct and proximate result of the actions of Marceno, Riley has incurred damages which include:  grave mental anguish, pain and suffering, loss of capacity for the enjoyment of life, embarrassment, humiliation, lost wages, intangible losses and loss of reputation.  Riley is entitled to punitive damages

against Marceno in his individual capacity. These damages have occurred at present, in the past, and will most likely occur in the future.

## COUNT XII

### Fourteenth Amendment Violations
### (Irizarry)

Riley hereby sues the Defendant, Irizarry and alleges:

290.    Riley hereby realleges paragraphs 1-176 hereinabove as if fully set forth herein.

291.    Riley sues the Defendant, Irizarry for abuse of power and violations of Riley's property and liberty interest under the due process clause of the Fourteenth Amendment pursuant to U.S.C. § 1983 (2023).  This count is alleged in the alternative and both the procedural and substantive Due Process rights of Riley are implicated given the claimed conduct is outrageous and shocking to the conscience.

292.    Irizarry violated the substantive and procedural Due Process clause of the Fourteenth Amendment by participating in a conspiracy to plant drugs in Riley's vehicle for purposes of conducting an illegal traffic stop and illegal search of Riley's vehicle to cause Riley's arrest and malicious criminal prosecution.

293.    Irizarry also made illegal false sworn statements in official documents regarding Riley and violated the civil and constitutional rights of Riley against the illegal search and seizure of his person and property and his illegal and improper

4892-3858-1388, v. 1

detention, prosecution, and incarceration for which there was no justification or legal basis. There was no process available to Riley to prevent or stop Irizarry from taking these illegal actions against Riley. The actions against Riley were taken knowingly, maliciously and unlawfully and under color of state law.

294. Irizarry misused and abused his power possessed by virtue of state law and made possible only because they were clothed with the authority of state law. Irizarry's violation of Riley's rights as described above occurred under color of state law and are actionable under 42 U.S.C. § 1983 (2023).

295. Irizarry is a person under applicable law and liable to Riley for the violation of his legal and constitutional rights.

296. Irizarry acted in bad faith, with malicious purpose and in a manner exhibiting wanton and willful disregard for human rights, safety, and property by conspiring to plant illegal drugs in Riley's vehicle for purposes of conducting an illegal traffic stop and an illegal search of Riley's vehicle in order to arrest and charge Riley with felony trafficking. Irizarry further participated directly in illegally arresting and detaining Riley causing the malicious criminal prosecution of Riley, making illegal false sworn statements in official documents regarding Riley, and violating the civil and constitutional rights of Riley against illegal search and seizure of his person and property and Riley's illegal and improper detention and prosecution and incarceration as described hereinabove.

297.    The actions of Irizarry were willful, wanton, and in reckless disregard of Riley's constitutional rights and were taken without lawful justification resulting in the violation of Riley's constitutional rights.

298.    As a direct and proximate result of Irizarry's actions, Riley has incurred damages, including: mental anguish, pain and suffering, loss of capacity for enjoyment of life, embarrassment, humiliation, loss of reputation, lost employment opportunities, lost wages, and loss of other emoluments.  These damages have occurred at present, in the past, and will most likely occur in the future.  Riley is entitled to punitive damages.

## COUNT XIII

### Fourth Amendment Violation - Unconstitutional Search and Seizure (Irizarry)

Riley hereby sues the Defendant, Irizarry for damages, and alleges:

299.    Riley hereby realleges paragraphs 1-176 hereinabove as if fully set forth herein.

300.    This is a claim against Defendant, Irizarry, as a certified Lee County deputy employed by Marceno, for an unconstitutional search and seizure under the Fourth Amendment to the United States Constitution when he conducted a pretextual stop and arrest of Riley as alleged herein.  Irizarry is a person under the laws applicable to this count.

301.    Irizarry's violation of the Fourth Amendment to the United States Constitution was the type and character as to which any reasonable person would be aware.

302.    Irizarry acted in bad faith and with malicious purpose and in a manner exhibiting wanton and willful disregard of human rights, safety, and property.

303.    The foregoing actions of Irizarry were willful, wanton, and in reckless disregard of Plaintiff's rights and were taken without any lawful justification and/or in the absence of reasonable suspicion, arguable probable cause and/or probable cause.

304.    Based upon the facts presented to Irizarry and the applicable law, no reasonable law enforcement officer could have concluded that there existed any legal basis to stop and search Riley's vehicle.  The law is well settled and established that the actions of Irizarry constituted an unlawful search and seizure under the Fourth Amendment to the United States Constitution at the time the actions by Irizarry were committed.

305.    The actions or inactions of Irizarry constituted deliberate indifference or reckless disregard for the safety of Riley, and Irizarry knew of and disregarded a risk to Riley's health and safety.

306.    Irizarry misused his power, possessed by virtue of state law and made possible only because they were clothed with the authority of state law.   The violation of Riley's rights as described above occurred under color of state law and are actionable under 42 U.S.C. § 1983 (2023).

307.    As a direct and proximate result of Irizarry's actions, Riley has incurred damages, including: grave mental health, anguish, pain and suffering, loss of capacity for the enjoyment of life; embarrassment; humiliation, loss of reputation, and loss other emoluments.   These damages have occurred at present, in the past, and will most likely occur in the future.   Riley is also entitled to punitive damages.

## COUNT XIV

### Fourth Amendment Violation – Unconstitutional Search and Seizure (Marceno)

Riley hereby sues the Defendant, Marceno, individually and in his official capacity as Sheriff of Lee County, Florida, for unconstitutional search and seizure, and alleges:

308.    Riley hereby realleges paragraphs 1-176 hereinabove as if fully set forth herein.

309.   This count is a claim against Defendant, Marceno for an unconstitutional search and seizure under the Fourth Amendment to the United States Constitution.   Marceno is a person under the laws applicable to this count.

310.   This is a claim against Marceno, who through his officers, deputies, employees, and agents violated Riley's rights under the Fourth Amendment to the United States Constitution to be free from illegal searches and seizures.  These violations were the type and character as to which any reasonable law enforcement agency and/or officer would be aware.  At all times, Marceno was responsible for the deputies and employees working with the Lee County Sheriff's Office, including supervising, overseeing, training, and establishing policies, customs, and procedures to conform their conduct to the United States Constitution and Florida law.

311.   At all times, Marceno was responsible for:

(a) Creating, adopting, and implementing rules, regulations, orders, policies, and procedures in the proper and effective hiring, supervising, and retaining of law enforcement officers who do not have a propensity towards pretextual stops of vehicles, conducting illegal searches of vehicles, planting evidence; and falsifying probable cause affidavits to affect arrests.

(b) Creating, adopting, and implementing rules, regulations, orders, policies, and procedures for the proper and efficient training of law enforcement officers in a way and to an extent necessary to ensure that the officers are properly stopping vehicles that are based on reasonable suspicion to believe that a crime has occurred and to search vehicles.

(c) Creating, adopting, and implementing rules, regulations, orders, policies, and procedures for proper policing, enduring the elimination of

corruption in his ranks and to ensure that his officers/deputies are properly stopping citizens with reasonable suspension and arresting with probable cause.

(d) Creating, adopting, and implementing rules, regulations, orders, policies, and procedures for the proper and efficient supervision, control, discipline, and assignment of law enforcement officers in a way and to an extent necessary to ensure that citizens will not be subject to being stopped and/or searched in violation of the Fourth Amendment.

(e) To implement rules, regulations, policies, orders, and procedures for the elimination or reduction of instances of pretextual stops and searches in an effort to plant drugs or other items to affect arrest in furtherance of a personal vendetta.

(f) To implement rules, regulations, and policies for the proper discipline of officers and employees of the Lee County Sheriff's Office. This includes ensuring appropriate charges are brought against deputies involved in criminal activity to discourage such activity within the Lee County Sheriff's Office.

312. Marceno, through his officers, employees, and agents, and through his own actions and inactions, misused his powers possessed by virtue of state law and made possible only because Marceno and his officers, employees, and agents were clothed with the authority of state law. The violations of Riley's rights as described occurred under color of state law and are actionable under 42 U.S.C. § 1983 (2021).

313.    Marceno's actions were taken in bad faith with malicious purpose and in a manner exhibiting wanton and willful disregard of human rights, safety, and property and were engaged in without any lawful justification and in the absence of reasonable suspicion and/or probable cause.

314.    Marceno knew or should have known that there was no probable cause or other legal justification to stop and/or search Riley given the circumstances with Marceno's deputies and other personnel, including but not limited to Irizarry and other deputies who engaged in this conspiracy to illegally plant drugs, unlawfully stop and search Riley, arrest Riley, and make false statements and probable cause affidavits to support the false arrest and prosecution of Riley.

315.    While Marceno may not have initially known of this unauthorized activity, he was fully informed of the private investigation and evidence uncovered by Riley and later confirmed by the Lee County Sheriff's Office with respect to all text messages exchanged between Irizarry and Custodio.  The overwhelming evidence presented in this case to Marceno led to the only conclusion that proper charges against Irizarry should include claims for criminal conspiracy, assault and battery, kidnapping, and bribery instead of the minimal charge brought by the State Attorney.

316.   Based upon facts presented to Marceno, through his officers, employees, agents, and applicable law, no reasonable law enforcement agency or officer could have concluded that there existed any legitimate reason to stop, much less to search and seize Riley.  The law is settled that the actions of Marceno, his delegates, deputies, officers, employees, and agents constituted unlawful search and seizure under the Fourth Amendment to the United States Constitution at the time the actions were engaged in.

317.   The actions or inactions of Marceno constituted a deliberate indifference and/or reckless disregard for the constitutional rights of Riley.

318.   Marceno acted with deliberate indifference in the failure to implement and enforce adequate hiring and supervisory procedures – or implemented no such policies or procedures – to prevent the harm that was caused to Riley including policies or procedures to properly identify suspects involved in criminal activity; policies and procedures to identify officers who falsify facts to support stops, searches, and seizures; policies and procedures to detect officers/deputies who may engage in criminal activity by illegally stopping and searching innocent citizens like Riley.

319.   Marceno failed to implement policies and procedures to properly discipline officers/deputies who willfully trample on the constitutional rights of law-abiding citizens like Riley, and to prevent the type of harm described above

4892-3858-1388, v. 1

as a direct result of which Riley was injured. Marceno was also deliberately indifferent in failing to train his officers in basic human dignity which resulted in constitutional violations.

320. Marceno was deliberately indifferent in hiring, retaining, and supervising Irizarry.

321. Marceno, individually and through delegated final decisionmakers acted under color of state law and failed to supervise, investigate, and discipline Irizarry and other officers, deputies, employees, and agents as alleged herein and was deliberately indifferent in their training and supervision, the results of which were constitutional violations against Riley.

322. Marceno and his delegates' failure to supervise, investigate, and discipline Irizarry and other officers, deputies, employees, and agents constituted a willful failure to implement or enforce Marceno's policies and procedures, which resulted in the deliberate indifference to the constitutional rights of Riley.

323. Marceno's supervisory and delegated final decisionmakers also officially sanctioned these actions resulting in a violation of Riley's constitutional rights.

324. The actions, inactions, and well-settled policies, customs, practices and procedures were the moving force behind the violation of Riley's rights. Marceno was grossly negligent, reckless, and/or deliberately indifferent to the

4892-3858-1388, v. 1

health, safety, and welfare of Riley in that Marceno assented to the failure to properly train, supervise, control, and conduct proper investigations into Irizarry.

325.   As a direct and proximate result of Marceno's actions, Riley has incurred damages, which damages include: mental anguish, pain and suffering, loss of capacity for the enjoyment of life, embarrassment, humiliation, loss of wages and other tangible losses, loss of reputation, and the loss of other emoluments.   Riley is entitled to punitive damages against Marceno in his individual capacity.  These damages have occurred at present, in the past, and will most likely occur in the future.

### Prayer for Relief

WHEREFORE, Riley demands judgment against the Defendants for the following:

(a)    That this Court accept jurisdiction over all issues raised in this case;

(b)    That this Court enter damages against the Defendants, Irizarry, Marceno, Custodio, and Snider, jointly and severally, awarding all compensatory damages and economic loss to Riley from the Defendants, jointly and severally, including punitive damages against Custodio, Irizarry, Snider, and Marceno, in his individual capacity;

(c)    Judgment against the Defendants in favor of Riley finding Riley is entitled to recover all attorneys' fees and costs and determining the amount of those fees and costs;

(d)    Prejudgment interest and interest;

(e)    Judgment against Defendants in favor of Riley permanently enjoining these Defendants from future violations of the law as summarized in this Complaint;

(f)    All other relief that this Court deems and proper.

### Demand For Jury Trial

Plaintiff demands a trial by jury for all issues so triable.

Dated: <u>November 1, 2023</u>

COLEMAN, TAYLOR, KLAUS, DOUPE, DIAZ & TORREZ, P.A.

4099 Tamiami Trail North, Suite 201
Naples, Florida  34103
Telephone:  (239) 298-5200
Facsimile:  (239) 298-5236

<u>J. Michael Coleman</u>
J. Michael Coleman, Esq.
LEAD COUNSEL
Florida Bar No. 606618
Amanda Globetti, Esq.
Florida Bar No. 126834
mcoleman@chtlegal.com
aglobetti@chtlegal.com

CHEFFY PASSIDOMO, P.A.

821 Fifth Avenue South
Naples, Florida 34102
Telephone:  (239) 261-9300
Facsimile:  (239) 261-9782

<u>Louis D. D'Agostino</u>
Louis D. D'Agostino, Esq.
Florida Bar No. 0776890
Rachael S. Loukonen, Esq.
Florida Bar No. 668435
lddagostino@napleslaw.com
rloukonen@napleslaw.com