UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

MARK P. RILEY,

      Plaintiff,

v.                             Case No.:  2:23-cv-981-JLB-KCD

CARMINE MARCENO, in his
official capacity as Sheriff of Lee
County, Florida, CARMINE
MARCENO, individually,
CHARLES CUSTODIO, NIKO
THOMAS IRIZARRY, SCOTT
JOSEPH SNIDER, II and LEE
COUNTY, FLORIDA,

      Defendants.
_____/

## **REPORT & RECOMMENDATION**

Before the Court is Defendant Carmine Marceno's Motion to Dismiss
(Doc. 44), and Plaintiff Mark Riley's response in opposition (Doc. 55).[1] For the
reasons below, the motion should be granted in part and denied in part.

## I. Background

Marceno is the Sheriff of Lee County. Riley alleges that Sheriff Marceno
violated his rights (both state and federal) through various actions after his

---

[1] Unless otherwise indicated, all internal quotation marks, citations, case history, and
alterations have been omitted in this and later citations.

arrest on drug charges. As a state court judge involved in Riley's criminal case remarked, the facts here are "just absolutely unbelievable." (Doc. 30 ¶ 183.)

In 2017, Riley reported his neighbor, Defendant Charles Custodio, for insurance fraud. Custodio vowed revenge and threatened to "ruin [Riley's] life and spend every minute and every dime he had to accomplish this goal." (Doc. 30 ¶ 28.) Custodio's scheming led to a sting operation where Riley was arrested for narcotics trafficking. It later emerged that Custodio planted the drugs with help of several co-conspirators, including Lee County Sheriff's Deputy Niko Irizarry.

After the criminal charges were dropped, Riley filed this civil rights suit. (*See* Doc. 30.) He brings a host of federal and state-law claims against Custodio and his co-conspirators. He also seeks relief against Sheriff Marceno. Riley claims Sheriff Marceno is responsible for the conduct of Deputy Irizarry because he "fail[ed] to have adequate policies and customs in place." (*Id.* ¶ 177.) The complaint also alleges that Sheriff Marceno "knew or should have known through Irizarry that there was no probable cause or other legal justification to arrest Riley." (*Id.* ¶ 218.)

Sheriff Marceno now moves to dismiss the complaint on several grounds. (Doc. 44.)

2

## II. Legal Standard

A complaint must recite "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This pleading standard "does not require detailed factual allegations," but does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* A facially plausible claim allows a "court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

When reviewing a motion to dismiss, courts must accept all factual allegations contained in the complaint as true and view the facts in the light most favorable to the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007). Legal conclusions, however, "are not entitled to the assumption of truth." *Ashcroft*, 556 U.S. at 664. And "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

## III. Discussion

Sheriff Marceno starts by attacking the complaint as a whole. He claims it is an impermissible "shotgun pleading." (Doc. 44 at 3.)

There are four types of shotgun pleadings. *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1321-23 (11th Cir. 2015). Complaints "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action" are shotgun pleadings. *Id*. at 1322. So too are those alleging "multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Id*. at 1323. But "[t]he key question in deciding whether a pleading is deemed shotgun is not whether a complaint fits into an identified category, but rather whether it includes enough information to allow a defendant and the court to readily determine if it states a plausible claim for relief." *Dunn v. Manuel*, No. 2:23-CV-00871-RDP, 2024 WL 790394, at *2 (N.D. Ala. Feb. 26, 2024).

Although the complaint here contains a few impermissible claims (more on that below), it cannot be said that Sheriff Marceno lacks "adequate notice of the [allegatons] against [him]." *Cont'l 332 Fund, LLC v. Albertelli*, 317 F. Supp. 3d 1124, 1140 (M.D. Fla. 2018). The complaint is structured in fourteen counts, ten of which apply to Sheriff Marceno. (*See* Doc. 30) And each count summarizes the facts and exhibits that allegedly support liability against Sheriff Marceno. The complaint does not impermissibly reincorporate each claim. Instead, only the general allegations are adopted into the counts

asserted directly against Sheriff Marceno, which is necessary to establish his liability.

"The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland*, 792 F.3d at 1323. Because the Court can ascertain what claims are brought against Sheriff Marceno and the conduct underlying them, the complaint as a whole should move forward. *See Taylor v. Starr*, No. 1:20-CV-00489-CLM, 2021 WL 1610671, at *3 (N.D. Ala. Apr. 26, 2021) ("[T]he Eleventh Circuit has cautioned that dismissals on shotgun pleading grounds are only appropriate where it is *virtually impossible* to know which allegations of fact are intended to support which claim(s) for relief." (emphasis added)).

The rest of Sheriff Marceno's arguments that target specific claims are addressed in turn.

## A. Count I

Riley's first claim alleges that Sheriff Marceno conspired with Deputy Irizarry and others to "violate [his] constitutional rights and other rights." (Doc. 30 ¶ 192.) But as Sheriff Marceno points out, Riley does not identify whether this claim is based on state or federal law. And if the latter, whether it arises under "Section 1983 or 1985." (Doc. 44 at 6.) This matters because the elements are different for each type of claim. *See, e.g., N.R. by Ragan v. Sch.*

*Bd. of Okaloosa Cnty., Fla.*, 418 F. Supp. 3d 957, 999 (N.D. Fla. 2019). While Riley has alleged facts to establish some form of conspiracy, he must identify the legal theory under which he is proceeding.

There is another problem. No matter the type of conspiracy claim Riley is pursuing, he must show that Sheriff Marceno "reached an understanding to violate [his] constitutional rights." *Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1260 (11th Cir. 2010); *see also Fuller v. Mortg. Elec. Registration Sys., Inc.*, 888 F. Supp. 2d 1257, 1273 (M.D. Fla. 2012). According to the complaint, Sheriff Marceno entered the picture *after* Riley's arrest and *after* his charges were handed to the State Attorney. Given this timeline, it is hard to see how Riley can say Sheriff Marceno joined a conspiracy that led to the violation of his constitutional rights. In other words, Sheriff Marceno was seemingly involved only after the harm was done. *See Fuller*, 888 F. Supp. 2d at 1273 ("The gist of a civil action for conspiracy is not the conspiracy itself, but the civil wrong which is done pursuant to the conspiracy and which results in damage to the plaintiff."). Still, there could be additional facts that would allow this claim to proceed in some iteration. *See, e.g., Park v. City of Atlanta*, 120 F.3d 1157, 1160 (11th Cir. 1997). Thus, Count I should be dismissed without prejudice.

**B. Count II**

In Count II, Riley claims Sheriff Marceno violated his "Due Process rights" guaranteed by the Fourteenth Amendment. (Doc. 30 ¶ 207.) In this context, the Due Process Clause provides two types of constitutional protection: procedural due process and substantive due process. *McKinney v. Pate*, 20 F.3d 1550, 1555 (11th Cir. 1994). To demonstrate a procedural due process violation, a plaintiff must allege "(1) a constitutionally protected interest in life, liberty or property, (2) governmental deprivation of that interest, and (3) the constitutional inadequacy of procedures accompanying the deprivation." *Bank of Jackson Cnty. v. Cherry*, 980 F.2d 1362, 1366 (11th Cir. 1993). Substantive due process, on the other hand, protects "fundamental rights," which are rights contemplated by the Constitution as "implicit in the concept of ordered liberty." *McKinney*, 20 F.3d at 1556.

Riley's allegations have both procedural and substantive components. (*See* Doc. 30 ¶ 211 ("There was no process available to Riley to prevent and stop Marceno, through Irizarry and other LCSO officers, . . . from taking these illegal actions[.]"); *Id.* ¶ 210 ("Marceno . . . participated in and ratified Riley's illegal arrest and detention[.]").) But neither theory can survive under the facts pled.

To the extent Riley is pursuing a substantive due process claim, his allegations "are redundant of the rights guaranteed by the more specific

Fourth Amendment." *Dorsey v. Wallace*, 134 F. Supp. 2d 1364, 1374 (N.D. Ga. 2000). Riley targets his arrest and prosecution under Count II. But "[t]he deprivations of which [he] complain[s] are protected under the Fourth Amendment." *Id.* As the Supreme Court has explained: "Where a particular amendment provides an explicit textual source of constitutional protection against a particular sort of governmental behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *Albright v. Oliver*, 510 U.S. 266, 273 (1994). Riley does nothing to explain how his substantive due process rights differ from what is covered by the Fourth Amendment, and thus his "substantive due process claim [should] be dismissed." *Feliciano v. Cabbage*, No. 8:12-CV-1676-T-27JSS, 2016 WL 593607, at *7 (M.D. Fla. Feb. 12, 2016); *see also Jennings v. City of Miami*, No. 07-23008-CIV, 2009 WL 413110, at *9 (S.D. Fla. Jan. 27, 2009).

As for procedural due process, Riley's allegations consist of a single conclusory paragraph. (Doc. 30 ¶ 211.) That is not enough. "Although notice pleading does not require a plaintiff to specifically plead every element of his cause of action, a complaint must still contain enough information regarding the material elements of a cause of action to support recovery under some "viable legal theory." *Am. Fed'n of Lab. & Cong. of Indus. Organizations v. City of Miami, FL*, 637 F.3d 1178, 1186 (11th Cir. 2011). Nothing in the complaint—

directly, inferentially, or otherwise—explains how Sheriff Marceno deprived Riley of due process.

As best the Court can tell, this case has nothing to do with due process. Riley is disputing the constitutionality of his arrest and prosecution, which are rights protected under the Fourth Amendment. *See Wood v. Kesler*, 323 F.3d 872, 882 n.14 (11th Cir. 2003). As noted above, the Court is recommending that Riley be allowed to file an amended complaint. But before realleging Count II, Riley must review existing case law addressing the Due Process Clause in this context. *See, e.g., Peach State Recovery, Inc. v. Goodwin*, 290 F. App'x 233, 234 (11th Cir. 2008); *Brown v. City of Dunwoody*, No. 1:11-CV-2448-AT, 2013 WL 12106332, at *9 (N.D. Ga. June 6, 2013); *Guerrero v. Blakely*, No. 6:12-CV-1072-CLS-SGC, 2014 WL 4686482, at *3 (N.D. Ala. Sept. 12, 2014).

### C. Counts III & IV

Turning to the Fourth Amendment, Riley alleges claims against Sheriff Marceno for "false arrest" (Count IV) and "unconstitutional search and seizure" (Count III). "[A]n arrest made without . . . probable cause violates the Fourth Amendment's prohibition on unreasonable searches and seizures" and triggers liability under 42 U.S.C. § 1983. *Skop v. City of Atlanta, GA*, 485 F.3d 1130, 1143 (11th Cir. 2007).

Riley seeks to hold Sheriff Marceno liable in both his official and individual capacity. "In an official-capacity claim, the relief sought is only

nominally against the official and in fact is against the official's office and thus the sovereign itself." *Lewis v. Clarke*, 581 U.S. 155, 162 (2017). A successful official capacity suit will thus result in a remedy that attaches to the official's seat rather than to the individual. "[W]hen an officer is sued under [§] 1983 in his or her official capacity, the suit is simply another way of pleading an action against an entity of which an officer is an agent." *Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991). Conversely, an individual capacity claim is one where "the real party in interest is the individual, not the sovereign." *Lewis*, 581 U.S. at 163. Individual capacity suits seek to impose only personal liability on a government official, meaning the remedy does not extend to the official's office. Sheriff Marceno argues Riley has not pled a valid Fourth Amendment claim under either theory.

### 1. Official Capacity

Sheriff Marceno, in his official capacity, cannot be held liable under § 1983 on a theory of respondeat superior. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); *see also Teblum v. City of Cape Coral Charter Sch. Auth.*, No. 2:20-CV-547-JLB-MRM, 2021 WL 1172910, at *7 (M.D. Fla. Mar. 29, 2021) (explaining that a municipal entity "may not be sued under § 1983 for an injury inflicted solely by its employees or agents"). Instead, municipal liability must be based on a government policy or custom. *Scala v. City of Winter Park*, 116 F.3d 1396, 1399 (11th Cir. 1997). As explained by the Supreme Court:

> [I]t is when execution of a government's policy or
> custom, whether made by its lawmakers or by those
> whose edicts or acts may fairly be said to represent
> official policy, inflicts the injury that the government
> as an entity is responsible under § 1983.

*Monell*, 436 U.S. at 694. A municipality "rarely will have an officially-adopted policy of permitting a particular constitutional violation," and so plaintiffs must "show that the [municipality] has a custom or practice" of permitting it. *Knight through Kerr v. Miami-Dade Cnty.*, 856 F.3d 795, 819 (11th Cir. 2017). "We refer to [this] as custom or practice liability." *Davis v. City of Apopka*, 78 F.4th 1326, 1352 n.7 (11th Cir. 2023).

Under certain circumstances, municipal liability may also be based on a single decision by a municipal official with final policymaking authority. *Scala*, 116 F.3d at 1399. This is called "final policymaker liability." *Davis*, 78 F.4th at 1352 n.7.

Riley does not assert that Sheriff Marceno had an official policy of allowing the constitutional violations underlying Counts III and IV—*i.e.*, planting drugs, unlawfully arresting citizens, and issuing false probable cause affidavits. But his complaint bristles with allegations of custom or practice liability. For instance, Sheriff Marceno allegedly "failed to implement policies and customs to properly discipline officers/deputies who willfully trample on the constitutional rights of law-abiding citizens." (Doc. 30 ¶ 244.) And Sheriff

Marceno "acted with deliberate indifference in the failure to implement and enforce adequate training and supervisory policies or customs." (*Id.* ¶ 243.)

Riley does little to defend these allegations—and for good reason. To trigger custom or practice liability, it is necessary to show a persistent and widespread practice. "Proof of a single incident of unconstitutional activity is not sufficient." *Craig v. Floyd Cnty., Ga.*, 643 F.3d 1306, 1310 (11th Cir. 2011). Thus, a "pattern of similar constitutional violations . . . is ordinarily necessary." *Id.*; *see Watkins v. Willson*, 824 F. App'x 938, 942 (11th Cir. 2020) (rejecting § 1983 claim where the plaintiff failed to show a "pattern of similar constitutional violations by untrained employees or a history of widespread abuse . . . under similar circumstances by other police officers, as required to proceed"); *Weiland*, 792 F.3d at 1328 (stating that "[a] pattern of similar constitutional violations by untrained employees is ordinarily necessary" and requiring facts to establish notice instead of conclusory allegations that notice existed). The complaint here states no *facts* supporting a prior pattern of similar constitutional violations (or any violations at all). While Riley does claim that Sheriff Marceno failed to train his deputies and implement policies that could have prevented what happened, that alone is not enough. *See, e.g.*, *Plowright v. Miami Dade Cnty.*, 102 F.4th 1358, 1370-71 (11th Cir. 2024); *Hollis v. Miami-Dade Cnty., Fla.*, No. 20-21930-CIV, 2021 WL 11702303, at *6 (S.D. Fla. Feb. 25, 2021).

Sheriff Marceno is allowed to "rely on the common sense of [his deputies] not to engage in . . . criminal conduct," but "a pattern of known misconduct . . . may be sufficient to change reasonable reliance [on the officers' common sense] into deliberate indifference." *Floyd v. Waiters*, 133 F.3d 786, 796 (11th Cir. 1998). There is simply no such evidence here. *See, e.g.*, *Barnes v. Miami-Dade Cnty.*, No. 13-20778-CIV, 2014 WL 12851971, at *7 (S.D. Fla. Mar. 12, 2014).

To keep Sheriff Marceno in the case under his official capacity, Riley instead claims that he "ratified former Lee County Deputy Irizarry's unconstitutional conduct." (Doc. 55 at 11; *see also* Doc. 30 ¶ 22 ("Marceno and Lee County ratified and affirmed Irizarry's egregious conduct, refusing to arrest Irizarry for any first degree felony charges[.]").) This is a viable theory. Municipal "liability on the basis of ratification exists when a subordinate public official makes an unconstitutional decision and when that decision is then adopted by someone who does have final policymaking authority." *Matthews v. Columbia Cnty.*, 294 F.3d 1294, 1297 (11th Cir. 2002). Sheriff Marceno agrees that he is a final policymaker for the conduct of his office.

Riley claims Sheriff Marceno ratified Deputy Irizarry's unconstitutional conduct by minimizing the criminal charges against him and destroying evidence. (Doc. 30 ¶¶ 175, 186.) Although it is questionable whether these facts are enough to ultimately prevail, they are at least sufficient to move the

dispute forward. *See, e.g.*, *Wright v. City of Euclid, Ohio*, 962 F.3d 852, 882 (6th Cir. 2020) ("A plaintiff can establish municipal liability by showing that the municipality ratifies the unconstitutional acts of its employees by failing to meaningfully investigate and punish allegations of unconstitutional conduct."). Accordingly, Riley's § 1983 claims against Sheriff Marcno in his official capacity should not be dismissed. Because Riley must already replead the complaint, the Court encourages him to review the requirements for asserting a policy or custom claim and include the requisite facts or drop such allegations.

### 2. Personal Capacity

Supervisory officials are not vicariously liable for the unconstitutional acts of their subordinates. *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003). "Instead, supervisory liability under § 1983 occurs either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation." *Id.*; *see also Ingram v. Kubik*, 30 F.4th 1241, 1254 (11th Cir. 2022).

Riley concedes that Sheriff Marceno did not participate in his arrest or detention, the harms underlying Counts III and IV. So Riley can prevail only if he identifies a causal connection between Sheriff Marceno and the unconstitutional conduct. A causal connection can be established when:

14

> 1) a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he or she fails to do so; 2) a supervisor's custom or policy results in deliberate indifference to constitutional rights; or 3) facts support an inference that the supervisor directed subordinates to act unlawfully or knew that subordinates would act unlawfully and failed to stop them from doing so.

*Mathews v. Crosby*, 480 F.3d 1265, 1270 (11th Cir. 2007).

The complaint does not allege that Sheriff Marceno personally directed Deputy Irizarry to act unlawfully or knew he would do so and failed to stop him. That leaves options one and two. As for the first, "[t]he deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." *Christmas v. Harris Cnty., Georgia*, 51 F.4th 1348, 1355 (11th Cir. 2022). The complaint discusses only Riley's arrest and detention—it does not point to other instances of misconduct of any kind. That dooms any claim Sheriff Marceno was on notice of "widespread abuse." *See, e.g.*, *Pleso v. Coats*, No. 8:06CV158T23MAP, 2006 WL 1876946, at *1 (M.D. Fla. July 5, 2006); *Rocker v. Sheriff of Marion Cnty., Fla.*, No. 5:07-CV-465-OC-10GRJ, 2009 WL 10705944, at *2 (M.D. Fla. Feb. 2, 2009).

The last avenue for establishing a causal connection is to show a custom or policy that resulted in deliberate indifference to Riley's constitutional rights. He can also allege the absence of a policy or training that "led to a violation of [his] constitutional rights." *Piazza v. Jefferson Cnty., Ala.*, 923 F.3d 947, 957

(11th Cir. 2019). "Either way, though, to prove that a policy or its absence caused a constitutional harm, a plaintiff must point to multiple incidents . . . or multiple reports of prior misconduct." *Id.* "A single incident of a constitutional violation is insufficient to prove a policy or custom even when the incident involves several [subordinates]." *Id.* Riley does not allege, must less establish, a pattern of similar constitutional violations or misconduct. And his conclusory allegations that Sheriff Marceno "fail[ed] to implement and enforce adequate training and supervisory policies or customs" will not do. (Doc. 30 ¶ 243); *see, e.g.*, *Sigler v. Bradshaw*, No. 13-80783-CIV, 2015 WL 1044175, at *3 (S.D. Fla. Mar. 10, 2015) (dismissing failure to train claim where the plaintiff failed to allege any other misconduct apart from her own situation; such an "isolated occurrence" did not put the agency on notice of an omission in its training program).

Like above, Riley argues personal liability was triggered when Sheriff Marceno ratified Deputy Irizarry's conduct. (*See* Doc. 55 at 9.) But as many courts have recognized, ratification doesn't fit here. *See, e.g.*, *Khansari v. City of Houston*, 14 F. Supp. 3d 842, 867 (S.D. Tex. 2014); *Thomas-Boyd v. Rogers*, No. 1:21-CV-22, 2021 WL 2256274, at *3 (M.D.N.C. June 3, 2021). This is because supervisory liability requires a "causal connection," and post-incident ratification cannot have caused the constitutional injury about which the plaintiff complains. *Cf. McGee v. Madison Cnty., Tenn.*, No. 3:15-CV-01069-

JPM-EGB, 2017 WL 6804233, at *9 (W.D. Tenn. Oct. 31, 2017). In any event, the Court is not aware of (and Riley has not cited) any case law from the Eleventh Circuit or Supreme Court imposing personal liability on a supervisor based on ratification. Thus, even assuming ratification extends into the personal liability sphere, Sheriff Marceno is entitled to qualified immunity. *See White v. Pauly*, 580 U.S. 73, 79 (2017) (qualified immunity attaches when an officials conduct does not violate clearly established statutory or constitutional rights that existing precedent places "beyond debate"); *Hunt v. Davis*, 749 F. App'x 522, 525 (9th Cir. 2018) (remarking qualified immunity is available on this type of ratification claim because "neither the Supreme Court nor our circuit has established that an official's post-incident ratification of or acquiescence to a claimed constitutional violation is alone sufficient for individual liability under § 1983").

Because Riley focuses solely on his own arrest and there is no evidence of an unconstitutional custom or policy, the complaint does not state a claim against Sheriff Marceno for supervisory liability. Accordingly, Counts III and IV must be dismissed as much as they are brought against Sheriff Marceno personally.

### D. Count V

Turning to state law, Riley alleges Sheriff Marceno is liable for "false imprisonment/arrest." (Doc. 30 ¶¶ 273-79.) Before addressing the merits, a

procedural issue warrants attention. Riley sues Sheriff Marceno both "individually and in his official capacity." This is improper. "Because suits against a municipal officer sued in his official capacity and direct suits against municipalities are functionally equivalent, there no longer exists a need to bring official-capacity actions against local government officials, because local government units can be sued directly." *De Armas v. Ross*, 680 So. 2d 1130, 1131-32 (Fla. Dist. Ct. App. 1996). What is more, given Riley admits that Sheriff Marceno had no involvement with his arrest, the Court struggles to understand how individual liability is triggered. The only argument Riley offers is that Sheriff Marceno ratified Deputy "Irizarry's unlawful conduct." (Doc. 55 at 15.) But he cites no authority applying this ratification theory to state-law claims. These issues must be addressed, and so the Court will grant leave to amend Count V to clarify who is the proper target of this claim and the basis for liability. In making this assessment, Riley should also consider that Florida's sovereign immunity statute (discussed below) precludes proceeding against Sheriff Marceno individually and in his official capacity. *See Perez v. Sch. Bd. of Miami-Dade Cnty., Fla.*, 917 F. Supp. 2d 1261, 1268 (S.D. Fla. 2013) ("Florida's sovereign immunity statute renders the liability of the officers and their respective employers mutually exclusive[.]").

Turning to the merits, "false arrest and false imprisonment are different labels for the same cause of action." *Rankin v. Evans*, 133 F.3d 1425, 1431

(11th Cir. 1998). "Florida law recognize[s] a cause of action for false arrest against a police officer and the officer's employing agency or municipality." *Benoit v. City of Lake City, Fla.*, 343 F. Supp. 3d 1219, 1230 (M.D. Fla. 2018). "[A] false arrest is the unlawful restraint of a person against his will, the gist of which action is the unlawful detention of the plaintiff and the deprivation of his liberty." *Eiras v. Fla.*, 239 F. Supp. 3d 1331, 1340 (M.D. Fla. 2017).

Sheriff Marceno does not dispute that Riley was falsely arrested. Rather, he claims that Florida's sovereign immunity statute protects him from suit because Deputy Irizzary "acted in bad faith [and] with malicious purpose." (Doc. 44 at 15.) Construing the facts in Riley's favor, as we must, the Court disagrees that sovereign immunity applies to Sheriff Marceno as a matter of law.

Florida's sovereign immunity statute, Fla. Stat. § 768.28(9)(a), creates a bifurcated tort liability scheme for public entities and their employees. Suits may proceed against an employee only if he: (i) acted outside the course and scope of his employment, or (ii) committed a tort "in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." *Brown v. McKinnon*, 964 So. 2d 173, 175 (Fla. Dist. Ct. App. 2007). In all other circumstances, the case must proceed against the agency for whom the employee worked. *Id.*

The effect of § 768.28(9)(a) is that government employees are entitled to immunity when "acting within the scope of [their] employment and without malice." *Ullman v. Fla. Dep't of Corr.*, No. 5:17-CV-66-OC-30PRL, 2017 WL 2103392, at *2 (M.D. Fla. May 15, 2017). By contrast, when these elements are present, the government agency is entitled to immunity. *See Richardson v. City of Pompano Beach*, 511 So. 2d 1121, 1123 (Fla. Dist. Ct. App. 1987) ("[A] governmental entity is liable for all torts, negligent ones and intentional ones alike, unless they are committed outside the course and scope of one's employment or unless the actor was acting in bad faith or with a malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.")

According to Sheriff Marceno, Deputy Irizzary's conduct compels the conclusion that he acted in bad faith and with malicious purpose. (Doc. 44 at 15-16.) Not so. Although that is a plausible inference, the facts can also suggest that Deputy Irizzary was merely a patsy for Custodio's scheme. The complaint is filled with messages between Deputy Irizzary and Custodio where they arranged Riley's arrest. But nowhere does Custodio say (or even suggest) that Riley was innocent, and the incriminating evidence had been planted. Thus, it is plausible that Deputy Irizzary thought he was arresting an actual criminal, which is entirely consistent with his authority as a law enforcement officer. While Deputy Irizzary may have had an improper motive for the arrest (*i.e.*,

currying favor with Custodio) that would not negate its legality. *Durruthy v. Pastor*, 351 F.3d 1080, 1088 n.5 (11th Cir. 2003). Viewed through this lens, Sheriff Marceno is not entitled to immunity, and his request to dismiss Count V must be denied. *See, e.g.*, *Gualtieri v. Bogle*, 343 So. 3d 1267, 1274 (Fla. Dist. Ct. App. 2022).

### E. Counts VII, VIII, & IX

Sticking with state law, Riley alleges "negligent hiring, retention, training, and supervision" (Count VII), "negligent supervision" (Count VIII), and "negligent training" (Count IX). There is a problem right from the start— these claims overlap and are redundant. While this may not prevent them from moving forward, *Se. Hisp. Region of Church of God of Prophecy, Inc. v. Church Mut. Ins. Co. S. I.*, No. 6:21-CV-933-CEM-EJK, 2021 WL 10555391, at *2 (M.D. Fla. July 29, 2021), it makes the complaint inherently confusing and prevents orderly adjudication. Thus, the Court will direct Riley to amend the complaint to properly divide his claims for negligent hiring, retention, training, and supervision. *See, e.g.*, *Reed v. Royal Caribbean Cruises, Ltd.*, No. 19-24668-CIV, 2021 WL 2592914, at *9 (S.D. Fla. Apr. 23, 2021) ("[N]egligent supervision and negligent training are separate claims which must be pled separately.").

As for the merits, Sheriff Marceno argues that Riley has not pled the factual predicate to establish negligent hiring, retention, or supervision. The Court agrees. These theories require proof that the employer (here Sheriff

Marceno) knew or should have known "of problems with an employee that indicate[ed] his unfitness [and yet failed] to take further action such as investigation, discharge, or reassignment." *Ruiz v. Ringling Coll. of Art & Design, Inc.*, 656 F. Supp. 3d 1340, 1350 (M.D. Fla. 2023). The crux is foreseeability: "There must be a connection and foreseeability between the employee's . . . history and the current tort committed by the employee." *Dep't of Env't Prot. v. Hardy*, 907 So. 2d 655, 661 (Fla. Dist. Ct. App. 2005). The complaint here alleges only one incident—Deputy Irizzary's unlawful arrest, detention, and prosecution of Riley. "It is not plausible to infer, on the basis of one incident, that [Sheriff Marceno] knew or should have known that the office[r] [he] employed presented a danger." *Perez v. Sch. Bd. of Miami-Dade Cnty., Fla.*, 917 F. Supp. 2d 1261, 1269 (S.D. Fla. 2013). Because Riley "has not alleged any facts demonstrating that [Sheriff Marceno] received actual or constructive notice of problems with [Deputy Irizzary's] fitness . . . [he] has failed to state a claim." *Hammer v. Lee Mem'l Health Sys.*, No. 2:18-CV-347-FTM-29-MRM, 2018 WL 3707832, at *2 (M.D. Fla. Aug. 3, 2018).

Negligent training is somewhat different. But it still requires proof that Sheriff Marceno was on notice of the need to implement different or additional training. *See Guerrero v. Target Corp.*, No. 12-24467-CIV, 2014 WL 11878423, at *4 (S.D. Fla. June 6, 2014) ("[T]here must be a connection and foreseeability between the inadequate training and the tort committed by the employee.").

While Riley's case is certainly distressing, that alone is not enough to establish deficient training. Thus, for the same reasons as above, Riley has not stated a claim for negligent training. *See Erickson v. Manatee Cnty. Sheriff's Dep't*, 824 F. App'x 861, 865 (11th Cir. 2020). Finally, leave to amend is proper because these claims fail for lack of factual detail and not legal deficiency.

### F. Count X

Last up, Riley alleges Sheriff Marceno is guilty of "malicious prosecution" under Florida law. This claim suffers from the same defect as Count V above—Riley incorrectly sues Sheriff Marceno in his "official capacity." *Braden Woods Homeowners Ass'n, Inc. v. Mavard Trading, Ltd.*, 277 So. 3d 664, 670 (Fla. Dist. Ct. App. 2019). What is more, any official capacity claim against Sheriff Marceno (or his office) is barred by sovereign immunity. Even a quick review of existing case law would have revealed this impediment. *See Weiland*, 792 F.3d at 1330 ("Florida courts have long recognized that Fla. Stat. § 768.28(9)(a) . . . bars claims for both intentional infliction of emotional distress and malicious prosecution.").

To the extent Riley is seeking relief against Sheriff Marceno in his personal capacity, he gets no further. To establish malicious prosecution, Riley must show that Sheriff Marceno "was the legal cause of the [criminal] proceeding[s]" or he "continued the prosecution." *Ware v. United States*, 971 F. Supp. 1442, 1461 (M.D. Fla. 1997). Riley fails to allege (let alone explain) how

Sheriff Marceno did anything to advance his prosecution. Riley's chief complaint seems to be that Sheriff Marceno did not investigate his allegations of innocence and take action. "Such statements, however, are generally not enough." *Swanson v. Scott*, 334 F. Supp. 3d 1203, 1218 (M.D. Fla. 2018). Simply put, there are no facts to establish how Sheriff Marceno (as opposed to Deputy Irizzary or the State Attorney) bears responsibility for Riley's criminal prosecution. The Court will grant leave to amend because, like above, this claim fails on factual grounds.

## IV. Conclusion.

No doubt Riley has a viable lawsuit—he was falsely arrested after drugs were planted in his car, and the several people involved have been criminally convicted. But holding Sheriff Marceno liable for these wrongs requires more than proof that one of his deputies was involved. "The standard by which a supervisor is held liable . . . for the actions of a subordinate is extremely rigorous." *Braddy v. Fla. Dep't of Lab. & Emp. Sec.*, 133 F.3d 797, 802 (11th Cir. 1998). Riley has done little to conform his claims to this body of law. For instance, Sheriff Marceno is indiscriminately sued in both his personal and official capacity. The Court expects counsel to thoroughly review the case law cited above and tailor any further claims accordingly.

It is thus **RECOMMENDED** that Sheriff Marceno's Motion to Dismiss (Doc. 44) be **GRANTED IN PART AND DENIED IN PART**. Riley's claims

in Counts I-V and VII-X be dismissed without prejudice, with fourteen days to file an amended complaint.

**ENTERED** in Fort Myers, Florida on July 1, 2024.


Kyle C. Dudek
United States Magistrate Judge

## NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1. To expedite resolution, parties may file a joint notice waiving the 14-day objection period.